### 33111. EIMCO BSP SERVICES COMPANY v. CHILIVIS.

MARSHALL, Justice.

The appellant Eimco, a foreign corporation, furnishes and installs municipal and industrial pollution control equipment. Eimco subcontracted in July of 1972, September of 1973, and July of 1974 to furnish and install sewerage sludge incinerators into the sewerage systems in Savannah and DeKalb County, and filtering media into the sewerage system in Athens. These construction projects are referred to by the parties as the Savannah project, the Snapfinger project, and the Athens project, respectively.

Eimco failed to remit to the state any sales or use taxes on this pollution control equipment. In 1976, the State Revenue Commissioner assessed $25,137.67 in taxes, penalties, and interest against Eimco. This assessment was appealed to the Fulton Superior Court. The superior court rendered a final judgment in favor of the Revenue Commissioner, and Eimco appeals. We affirm.

The dispute in this case revolves around two provisions of the Georgia Retailers' and Consumers' Sales and Use Tax Act. The first is Code Ann. § 92-3403a (C) (2) (t.1) (Ga. L. 1951, pp. 360, 363; 1967, p. 286) (referred to hereinafter as *Exemption t.1*). The first paragraph of *Exemption t.1* provides that the terms "sale at retail," "use," "storage," and "consumption" shall not include "[t]he sale of machinery and equipment which is incorporated into any facility and used for the primary purpose of reducing or eliminating air or water pollution." In a second paragraph, *Exemption t.1* further provides that: "Any person making a sale of machinery and equipment for the purposes specified in this subparagraph shall collect the tax imposed thereon by this Chapter unless the purchaser furnishes him with a certificate issued by the commissioner certifying that the purchaser is entitled to purchase such machinery and equipment without paying the tax."

Effective July 12, 1967, the Revenue Commissioner promulgated Regulation 560-12-2-.87 (Rules and Regulations of the State of Georgia) in enforcement of this exemption. This regulation requires a purchaser of pollution control machinery and equipment to be installed into his facilities to file an application for a certificate of exemption with the Revenue Commissioner (Section 2). Before the certificate of exemption will be issued, the equipment and machinery must be certified by the Georgia Water Quality Control Board or the State Health Department (now the Environmental Protection Division of the Department of Natural Resources) as necessary and adequate for the purposes intended. (Section 3).

In 1972, the General Assembly enacted Code Ann. § 92-3403a (C) (2) (y) (Ga. L. 1951, pp. 360, 363; 1972, p. 504) (referred to hereinafter as *Exemption y*), which was approved by the Governor on March 27, 1972. It exempts from sales and use taxation, "[t]he sale of machinery and equipment for use to combat air and water pollution, and any industrial materials bought for further processing in the manufacture of tangible personal property for sale or any part of said industrial material or by-product which becomes a wasteful product contributing to pollution

problems and which is used up in a recycling or burning process."

In July of 1972, Eimco inquired by letter of the Revenue Commissioner whether its purchases of pollution control machinery and equipment in the Savannah project would be exempt under *Exemption y*. In August of 1972, the Revenue Commissioner responded: "Under the Georgia Sales and Use Tax Act, as amended, any person who contracts to furnish tangible personal property and perform services thereunder, is deemed to be the consumer of all tangible personal property used in performance of the contract and is required to pay the tax thereon at the time of purchase. It is immaterial whether the contract is with the Federal government, the State of Georgia, or any political subdivision of the State."

In response to another letter from Eimco sent in February of 1973, inquiring as to how it could obtain certificates of exemption for pollution control equipment used in performing its contracts, the Revenue Commissioner responded by letter, as follows: "Under the Georgia Sales and Use Tax Act, a contractor is deemed to be the consumer of all tangible personal property used or consumed in performing a contract within the State and is required to pay the tax thereon at the time of purchase ... Where a contractor purchases machinery and equipment for pollution control, he should pay the tax thereon. When the job is completed, the property owner may file claim for the tax paid on approved machinery and equipment."[1]

Effective February 2, 1975, the Revenue Commission amended Regulation 560-12-2-.87. As amended, the regulation provides that an application for certificate of exemption should be filed by the ultimate owner and user of the machinery and equipment (Section 4). It is further provided that an exemption certificate will

[1] Code Ann. § 92-3448a (Ga. L. 1955, p. 389) provides in part that: "Any person who contracts, either orally, in writing or by purchase order, to furnish tangible personal property and perform services thereunder within this State, shall be deemed to be the consumer of the tangible personal property, and shall pay the sales tax levied by this Chapter at the time of the purchase."

not be issued to a contractor; however, the ultimate owner of the property may file claim for refund of the tax paid on the approved machinery and equipment within three years following the date of payment to the retailer (Section 6 (a) and (b)).

Eimco obtained certificates that the equipment and machinery installed in the Snapfinger and Savannah projects were necessary and essential for pollution control purposes. Eimco did not apply for such certificates for the machinery and equipment installed in the Athens project.

As we stated earlier in the opinion, Eimco failed to remit any taxes on any of the machinery or equipment installed in any of the construction projects in this state. Jurisdiction of Eimco's appeal from the adverse judgment below is in this court under *Collins v. State,* 239 Ga. 400 (236 SE2d 759) (1977). *Held:*

The initial question we face in this appeal is whether the terms of *Exemption t.1* are broad enough to authorize the Revenue Commissioner in requiring the contractor to remit the tax on pollution control equipment and allowing the ultimate owner to file a claim for refund.

We find in both the first and second paragraphs of *Exemption t.1,* language that would authorize such a scheme of administrative enforcement. The first paragraph requires the equipment to be incorporated into a facility in order to qualify for sales and use tax exemption. The commissioner argues, and the trial court found, that this scheme of enforcement was necessary in order to police the exemption so as to ensure that only equipment that qualifies for the exemption, i.e., that is incorporated into a facility, escapes taxation. We agree. The second paragraph requires any person making a sale of pollution control equipment to remit the tax to the state unless the purchaser furnishes him with a certificate of exemption issued by the Revenue Commissioner. (Thus, the taxpayer's argument that *Exemption t.1* contains an absolute, unqualified exemption for pollution control equipment, is without merit.) Since a contractor is treated as, in effect, a "fictitious purchaser" of property used in performing his contract,[2] *Exemption t.1* by its own terms

---

[2] Ibid.

would require the contractor to obtain a certificate of exemption. Thus, the question for decision can be alternately stated as whether the commissioner is authorized to deny the contractor a certificate of exemption.

The taxpayer argues that by requiring it to remit the tax to the state, the commissioner is in effect imposing a tax on an exempt transaction. The commissioner argues that the exemption is retained because the state ultimately derives no revenue from the remitting of the tax. The commissioner assures us that various sale-for-resale exemptions ensure that the tax on pollution control equipment will be remitted in only one stage in the chain of sale and use, and that the ultimate owner of the equipment can then obtain a refund of this tax that has been paid. Since, as a matter of economics, this tax will have been passed on to the owner of the equipment by the contractor, the contractor still obtains the benefit of the exemption. The commissioner points out all of this in order to show that this method of administering the exemption does not in fact abrogate it. We agree with this also.

Therefore, we must determine whether the regulation enforcing the exemption in this matter is "reasonable"[3] and "consistent"[4] with both *Exemption t.1* and *Exemption y.* For the reasons which we have

---

[3] Code Ann. § 92-8427 (Ga. L. 1937-38, Ex. Sess., pp. 71, 91) provides that, "The State Revenue Commissioner is charged with the administration and supervision of all tax laws of the State. He shall prepare the forms he deems necessary and shall make such reasonable rules and regulations as he finds desirable to enforce the provisions thereof." Code Ann. § 92-3438a (Ga. L. 1951, pp. 360, 385) provides that, "The Commissioner shall have the power to make and publish reasonable rules and regulations not inconsistent with this Chapter or the other laws, or the Constitution of this State or the United States for the enforcement of the provisions of this Chapter and the collection of revenues hereunder."

[4] See Code Ann. § 92-3438a, above.

previously stated, we hold that under *Exemption t.1* it unquestionably is.

We reject the taxpayer's argument that this method of enforcing the exemption is contrary to Code Ann. § 92-8436 (b). Section 92-8436 (b) provides that, "In any case in which it shall be determined that an erroneous or illegal collection of tax or license has been made by the commissioner, the taxpayer from whom such tax or license was collected may, at any time within three years after the date of the payment of same to the State Revenue Commissioner, file a claim for refund . . ." Since the contractor here would be remitting sales and use taxes on pollution control equipment pursuant to a regulation of the commissioner, § 92-8436 (b) would not preclude the owner of the facility into which the equipment is incorporated from filing a claim for refund pursuant to this same regulation. We are cited to *Atlanta Americana Motor Hotel Corp. v. Undercofler,* 222 Ga. 295 (149 SE2d 691) (1966); *Blackmon v. Premium Oil Stations, Inc.,* 129 Ga. App. 169 (198 SE2d 900) (1973); and *Blackmon v. Ga. Independent Oilmen's Assn.,* 129 Ga. App. 171 (198 SE2d 896) (1973), which hold that a party lacks standing to file a claim for refund of taxes illegally or erroneously paid, even though the party may technically be classified as the "taxpayer" under the statute, if the taxpayer in fact passed the tax on to its customers and then remitted the tax to the state. Here, the contractor has presumably passed the tax on to the owner of the facility and, therefore, it can at least be argued that the foregoing decisions provide some authority for the commissioner's allowing the owner to file a claim for refund.

While the 1967 regulation is not free of ambiguity, the second section of this regulation does indicate that only "the purchaser of such machinery and equipment to be incorporated into his facilities" will be issued a certificate of exemption. We hold that the commissioner was authorized to deny the contractor a certificate of exemption under the 1967 regulation.

The final, and most difficult, question with which we have to deal is whether *Exemption y,* which seemingly exempts pollution control equipment from taxation without requiring it be incorporated into a facility,

impliedly repealed *Exemption t.1* and the implementing regulation. We have determined that *Exemption y* did not have the broad effect suggested. We, therefore, answer this final question in the negative.

The Act in which *Exemption y* is contained is found at Ga. L. 1972, p. 504. Looking both to the caption of this Act[5] and to its body, it appears to us that the General Assembly intended by the enactment of the first clause of *Exemption y* to exempt from taxation, not pollution control machinery and equipment in general, but only pollution control equipment and machinery used in recycling the industrial materials exempted in the second clause of this Act. As found by the trial court, the second clause of *Exemption y* is intended to exempt from taxation industrial raw materials, used in the process of manufacturing tangible personal property for sale, which previously became wasteful by-products, but which now, with the advent of stricter pollution control standards, are being recycled or burned and used as a source of energy. Examples of such raw materials are the bark and resin from logs used in making paper. The logs themselves are exempt from taxation under Code Ann. § 92-3403a (C) (2).[6] As a wasteful by-product, the bark and resin did not qualify for the § 92-3403a (C) (2) exemption; however, they were valueless as waste and, therefore, went untaxed. When they began to be recycled for use as an energy source, they did technically become subject to taxation, although they were passing under the certificates of exemption which Regulation 560-12-1-.08

---

[5] The caption of the 1972 Act reads: "An Act to amend an Act known as the 'Georgia Retailers' and Consumers' Sales and Use Tax Act', approved February 20, 1951 (Ga. L. 1951, p. 360), as amended, so as to exempt certain machinery and equipment from the provisions of said Act; to exempt products or by-products derived as a result of the use of such machinery and equipment and subsequently used for pollution abatement purposes from the provisions of said Act; to repeal conflicting laws; and for other purposes."

[6] Code Ann. § 92-3403a (C) (2) provides that "The

(2) (b) requires for industrial materials exempted under § 92-3403a (C) (2). *Exemption y* was enacted to provide such industrial materials with a bona fide statutory exemption.

The trial court was, therefore, correct in ruling that Eimco is subject to the assessment by the Revenue Commissioner. The judgment of the trial court is, accordingly, affirmed.

*Judgment affirmed. All the Justices concur, except Undercofler, P. J., and Bowles, J., who concur in the judgment only.*

ARGUED JANUARY 16, 1978 — DECIDED APRIL 4, 1978 — REHEARING DENIED APRIL 25, 1978.

*Hansell, Post, Brandon & Dorsey, Earl T. Berry,* for appellant.

*Arthur K. Bolton, Attorney General, James C. Pratt, Assistant Attorney General,* for appellee.

*Schreeder, Wheeler & Flint, David H. Flint, George P. Dillard, Gail C. Flake,* amicus curiae.

---

terms 'sale at retail,' 'use,' 'storage,' and 'consumption,' shall not include the sale, use, storage or consumption of industrial materials for future processing, manufacture or conversion into articles of tangible personal property for resale where such industrial materials become a component part of the finished product . . ."