S04G0936. SAWNEE ELECTRICAL MEMBERSHIP CORPORATION v. GEORGIA DEPARTMENT OF REVENUE.
(608 SE2d 611)

BENHAM, Justice.

On behalf of its 108,000 members/patrons, Sawnee Electrical Membership Corporation ("the EMC") filed a claim for refund of sales tax with the Georgia Department of Revenue in 1999, pursuant to OCGA § 48-2-35 (b) (1). When the claim was not decided within one year of filing, the EMC, again on behalf of its members/patrons, brought an action for a refund pursuant to OCGA § 48-2-35 (b) (4) in the Superior Court of Forsyth County. The trial court granted the EMC's motion for summary judgment and the Court of Appeals reversed that judgment, ruling that the EMC lacked standing to seek a state sales tax refund. *Ga. Dept. of Revenue v. Sawnee Electrical Membership Corp.*, 265 Ga. App. 320 (593 SE2d 756) (2004). We granted a writ of certiorari to the Court of Appeals to determine whether the Court of Appeals or the trial court correctly decided the issue of the EMC's standing to bring an action for a refund of state sales tax on behalf of its members.

1. "There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy [direct standing]. . . . Even in the absence of injury to itself, an association may have standing solely as the representative of its members [associational standing]." *Warth v. Seldin*, 422 U. S. 490, 511 (95 SC 2197, 45 LE2d 343) (1975). See *Aldridge v. Ga. Hospitality &c. Assn.*, 251 Ga. 234 (1) (304 SE2d 708) (1983), where this Court

adopted the tripartite "associational standing" test set out in *Hunt v. Wash. State Apple Advertising Comm.*, 432 U. S. 333, 343 (97 SC 2434, 53 LE2d 383) (1977).

2. We address first the question of the EMC's direct standing. Under OCGA § 48-2-35 (b) (4), one must be a "taxpayer" to bring an action for a tax refund. The statutory authorization to bring an action for a tax refund in superior court against a governmental body is an express waiver of sovereign immunity (*City of Atlanta v. Barnes*, 276 Ga. 449 (3) (578 SE2d 110) (2003)), and the State's consent to be sued must be strictly construed. *Doe #102 v. Dept. of Corrections*, 268 Ga. 582 (2) (492 SE2d 516) (1997). See *Eibel v. Forrester*, 194 Ga. 439, 441-442 (22 SE2d 96) (1942). If the party remitting the tax to the governmental body did not bear the burden of the tax because it passed the tax on to its customers, the party remitting the tax does not have standing to file a claim for refund of state taxes. *James B. Beam &c. v. State of Ga.*, 263 Ga. 609 (2) (437 SE2d 782) (1993); *Eimco BSP Svcs. v. Chilivis*, 241 Ga. 263, 268 (244 SE2d 829) (1978).

The contested tax is one imposed on the sale of electricity. As set forth in the Georgia Electric Membership Corporation Act, OCGA § 46-3-170 et seq., one of the purposes of an EMC is to furnish electrical energy and service to its members. OCGA § 46-3-200 (1). The bylaws of the EMC provide that members of the EMC agree to purchase electrical power and energy from the EMC. The sale of electricity to a purchaser for purposes other than for resale is a retail sale (OCGA § 48-8-2 (6) (B)) on which the purchaser must pay a sales tax to the retailer, which tax the retailer must remit to the Georgia Commissioner of Revenue. OCGA § 48-8-30 (a). Since the EMC did not bear the burden of the tax because it was passed on to its members/patrons, the EMC did not have direct standing to file a claim for refund of state taxes. *James B. Beam*, supra, 263 Ga. 609; *Eimco BSP*, supra, 241 Ga. at 268.

Citing *Footpress Corp. v. Strickland*, 242 Ga. 686 (1) (251 SE2d 278) (1978), the trial court concluded the EMC had direct standing to bring the tax refund action after finding the relationship between the EMC and its members was analogous to the relationship set out in *Footpress*. Expressly relying on the "unique facts" presented, the Court in *Footpress* determined that a party other than the party which had paid a lease tax was authorized to pursue a tax refund action. In *Footpress*, McCall Corporation created Footpress Corporation which obtained a three million dollar bank loan Footpress then used to purchase printing equipment from McCall, which McCall then leased from Footpress and was granted the right to repurchase the equipment upon termination of the lease for 1/300 of the purchase price paid by Footpress. McCall paid the tax imposed by the Georgia Commissioner of Revenue on the equipment lease, and Footpress

filed a demand for refund. After the claim for refund was denied by the Commissioner, Footpress filed an action for refund. In response to the Commissioner's contention that Footpress could not pursue a refund action because McCall had paid the tax, this Court noted that the Commissioner had treated the assets of Footpress as though they belonged to McCall, had treated McCall and Footpress as identical entities for income tax purposes, and had decided the Footpress claim for refund on its merits. This Court cited "these unique facts" to support its determination that Footpress could pursue the refund action since the action taken by either Footpress or McCall amounted to action taken by the other. At the same time, this Court expressly distinguished the Footpress-McCall relationship from the line of cases refusing to permit a retailer to pursue a refund action for taxes paid by consumers. *Footpress Corp. v. Strickland*, supra, 242 Ga. at 687.

In the case at bar, there is no evidence the unique facts that led to the *Footpress* decision are present. There is no evidence the Department of Revenue has treated the assets of the EMC as though they belong to the members/patrons; no evidence the Department of Revenue has treated the EMC and its members/patrons as identical entities for income tax purposes, and we know for a fact the Department of Revenue did not decide the EMC's claim for refund on its merits. Thus, the case at bar does not contain the "unique facts" which led this Court to permit an entity that did not pay a tax at issue to pursue an action for tax refund. Furthermore, the case at bar falls directly within the line of cases distinguished in *Footpress* since the EMC is a retailer of electricity and its members/patrons pay sales tax on the purchase of that electricity. It was error for the trial court to use the holding in *Footpress* to conclude the EMC had direct standing in the action for tax refund.

3. The EMC next asserts it has "associational standing" as a representative of its members/patrons, all of whom paid the contested sales tax remitted by the EMC to the Department of Revenue. Associational standing permits an association that has suffered no injury to sue on behalf of its members when the members would otherwise have standing to sue in their own right; the interests the association seeks to protect are germane to the association's purpose; and neither the claim asserted nor the relief requested requires the participation in the lawsuit of the individual members. See *Aldridge v. Ga. Hospitality &c. Assn.*, supra, 251 Ga. 234 (1), where this Court adopted the U. S. Supreme Court's test for associational standing set out in *Hunt v. Wash. State Apple Advertising Comm.*, supra, 432 U. S. 333, 343. The U. S. Supreme Court observed in *Hunt* that associational standing had been recognized only where the association sought "a declaration, injunction, or some other form of prospective

relief . . . [that] will inure to the benefit of those members of the association actually injured." Id.

Assuming for the sake of argument that the EMC meets the criteria to serve as the associational representative of all the members/patrons who paid the contested sales tax to the Department of Revenue through the EMC, and that the EMC is seeking some form of prospective relief, we conclude that to permit associational standing in a tax refund action would run afoul of the principle that the doctrine of sovereign immunity cannot be abrogated by this Court (*State Bd. of Ed. v. Drury*, 263 Ga. 429 (1) (437 SE2d 290) (1993)), and the requirement that legislative waivers of sovereign immunity be strictly construed.

The Georgia Constitution provides: "The sovereign immunity of the state and its departments can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." 1983 Ga. Const., Art. I, Sec. II, Par. IX (e). OCGA § 48-2-35 (b) (4) authorizes only a taxpayer whose claim for refund has been departmentally denied or not acted upon to file an action for refund, and OCGA § 48-2-35 (b) (5) expressly prohibits any taxpayer from bringing a tax refund action on behalf of other taxpayers alleged to be similarly situated.[1] The EMC is not a taxpayer authorized to file an action for sales tax refund. See Division 2, supra. The General Assembly has expressly refused to extend the waiver of sovereign immunity in an action for sales tax refund to a *taxpayer* acting in a representative capacity for fellow taxpayers. In light of that legislative action, it is clear the limited waiver of sovereign immunity provided by OCGA § 48-2-35 does not extend to a *non-taxpayer* seeking to act in a representative capacity for taxpayers in an action for sales tax refund. Accordingly, we affirm the judgment of the Court of Appeals reversing the trial court's denial of summary judgment to the Department of Revenue.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 7, 2005.

*Jackson & Tyler, H. Bruce Jackson, John P. Tyler, Anthony J. Rollins*, for appellant.

---

[1] OCGA § 48-2-35 (b) (5) was passed during the 2003 legislative session and constitutes a legislative overruling of this Court's holding in *City of Atlanta v. Barnes*, supra, 276 Ga. 449 (3), that a class action was a permissible means for a taxpayer to pursue a tax refund action.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, Warren R. Calvert, Senior Assistant Attorney General, Alex F. Sponseller, Assistant Attorney General*, for appellee.