296 Ga. 793
FINAL COPY

S14A1493.  SJN PROPERTIES, LLC v. FULTON COUNTY
BOARD OF ASSESSORS et al.

HUNSTEIN, Justice.

In 2009, John Sherman, a resident and taxpayer of Fulton County, filed

suit, on behalf of himself and all others similarly situated, against the Fulton

County Board of Assessors (hereinafter, "FCBOA"), along with its Chief

Appraiser and each of its members in their official capacities, to challenge the

FCBOA's method of valuing leasehold estates arising from a sale-leaseback

bond transaction involving the Development Authority of Fulton County

(hereinafter, "DAFC").[1]  As described in an earlier appeal arising from this same

case, the sale-leaseback transaction at issue here was structured as follows:

> A bond transaction leasehold estate is created when a local
> development authority, in accordance with its redevelopment
> powers, enters into a bond transaction agreement with a private
> developer of certain real property.  The local development authority
> issues revenue bonds under a financing program to the developer,
> who conveys to the authority fee simple title to the property.  The
> development authority and the developer then enter into a multi-
> year lease arrangement whereby the authority, as owner, leases the
> property to the developer.  The resulting lease payments are used by

---

[1] Shortly after the petition was filed, the DAFC successfully moved to intervene as a defendant in the case.

the local development authority to make the principal and interest payments on the revenue bonds. The terms of the agreement allow the developer to repurchase the fee simple estate for a nominal amount once the revenue bonds are paid down or retired.

As part of the transaction, the parties enter into a written agreement that sets forth a specific method for determining the fair market value of the resulting leasehold estate held by the private developer. The method estimates the initial fair market value of the leasehold estate to be 50 percent of the fair market value of the fee simple estate. The estimated value of the leasehold estate is then "ramped up" by five percent per year. By the eleventh year, the leasehold estate is valued at 100 percent of the fair market value of the fee simple estate.

Sherman v. Fulton County Bd. of Assessors, 288 Ga. 88, 89 (701 SE2d 472) (2010) (hereinafter, "Sherman I"). Sherman claims that this so-called "50% ramp-up" methodology results in the valuation of the developers' leasehold estates at less than fair market value, in violation of defendants' statutory and constitutional duties to ensure that ad valorem taxes are assessed uniformly and at fair market value.

In October 2009, the trial court granted the defendants' motion to dismiss/motion for judgment on the pleadings, and, on appeal, this Court reversed. Sherman, 288 Ga. at 95. The Court held that the case was not subject to dismissal because, while there was no dispute as to the valuation methodology employed, there was no way to conclusively determine at that

stage of the proceedings that such methodology actually resulted in a fair valuation of the leasehold estate. Id. at 93. This Court reasoned:

> [Defendants] argue that their initial valuation of the fee simple estate follows an authorized appraisal approach and takes into account some of the factors referenced above, such as similarly leased properties in the area and the market rents in the area. However, a valuation of the fee simple estate is just the first step. [Defendants] will need to offer evidence as to how their method applied to the leasehold estate incorporates the requisite factors. They assert that we should just assume that every leasehold estate is worth 50 percent of its fee simple estate, but offer no evidence to support this assumption. Without such evidence, and in light of the affidavit filed by Sherman to the contrary, we are unable to determine, pursuant to *DeKalb County Bd. of Tax Assessors v. W.C. Harris & Co.*, supra, that the valuation method used by [Defendants] is not arbitrary and unreasonable, and therefore the petition should not have been dismissed pursuant to OCGA § 9-11-12 (b) (6).

Id.

After remand, SJN Properties, LLC (hereinafter, "SJN") was added as a plaintiff in the action.[2] The plaintiffs filed an amended and restated class action petition, again seeking declaratory, injunctive, and mandamus relief with respect to the valuation methodology, and adding a claim seeking declaratory, injunctive, and mandamus relief with respect to a subset of DAFC-owned

---

[2] In December 2013, Sherman moved to be dropped as party to the proceedings, ostensibly for health reasons, leaving SJN as the sole plaintiff in the case.

properties involved in these bond transactions, which, according to the plaintiffs, have improperly been treated as tax exempt. Thereafter, the parties filed cross-motions for summary judgment, and the trial court granted the defendants' motions. Though we find error in the trial court's striking of two affidavits submitted by SJN, we nonetheless, for the reasons set forth below, affirm the grant of summary judgment to the defendants.

1. At the summary judgment hearing, the trial court struck as untimely two affidavits SJN had filed and served on the day before the hearing. The first is the affidavit of expert real estate appraiser J. Carl Schultz, Jr., comprised of 16 pages of testimony accompanied by more than 200 pages of supporting exhibits. The second is the affidavit of John F. Woodham, one of three attorneys of record for SJN; this affidavit is comprised of nine pages of testimony and approximately 150 pages of supporting exhibits. SJN filed these affidavits in the trial court and served them on the defendants on December 19, 2013, the day before the December 20, 2013 summary judgment hearing. Service was effectuated both by U. S. Mail and electronically; defendants' counsel received electronic copies of the affidavits at 5:24 p.m. on December 19. Concluding that these affidavits were untimely filed, the trial court declined to

4

consider them.

SJN contends the trial court erred in striking the affidavits, claiming that they were filed and served in accordance with the Civil Practice Act. Though we find SJN's voluminous eleventh-hour filing discourteous, we are constrained to agree that this filing was technically in compliance with the requirements of the Civil Practice Act and thus that the trial court erred in striking the affidavits. OCGA § 9-11-56 (c) authorizes a party against whom a summary judgment motion has been filed to serve affidavits in opposition to the motion at any time "prior to the day of hearing." See also OCGA § 9-11-6 (d) (governing motions generally, providing that "[o]pposing affidavits may be served not later than one day before the hearing"); Woods v. Hall, 315 Ga. App. 93 (1) (726 SE2d 596) (2012) (vacating grant of summary judgment, finding that trial court erred in striking as untimely plaintiff's opposing affidavit, filed three days prior to hearing). Cf. Brown v. Williams, 259 Ga. 6 (4) (375 SE2d 835) (1989) (opposing affidavit filed on day of hearing was untimely). The Court of Appeals has, in fact, held that opposing affidavits were timely where served on the day before the hearing only by U. S. Mail, such that the movant had not even received them as of the time of the hearing. See Kirkland v. Kirkland, 285 Ga.

5

App. 238 (2) (645 SE2d 626) (2007) (opposing affidavit served by mail on day before summary judgment hearing was timely and properly considered); Martin v. Newman, 162 Ga. App. 725 (2) (293 SE2d 18) (1982) (same). Though we find the gamesmanship in such delayed filings distasteful, we cannot ignore the plain language of OCGA § 9-11-56 (c), which, regrettably, allows parties to employ such tactics.[3] The trial court therefore erred in refusing to consider the Schultz and Woodham affidavits in its adjudication of defendants' motions for summary judgment. In our de novo review of the evidence here, see Jones v. Kirk, 290 Ga. 220, 221 (719 SE2d 428) (2011), we will thus consider these affidavits, to the extent they are otherwise "admissible in the evidence [and] . . . show affirmatively that the affiant is competent to testify to the matters stated therein." OCGA § 9-11-56 (e).

2. In reviewing the merits of a trial court's decision on a motion for summary judgment, "'this Court conducts a de novo review of the evidence to

---

[3] We note that the Federal Rules of Civil Procedure, on which our Civil Practice Act is modeled, see Ambler v. Ambler, 230 Ga. 281 (1) (196 SE2d 858) (1973), currently require the service of opposing affidavits no later than seven days prior to a hearing. Fed. R. Civ. P. 6 (c) (2). The current rule is more stringent than the prior version, which required only that opposing affidavits be served at least one day before the hearing. See Charles Alan Wright et al., 4B Fed. Prac. & Proc. Civ. § 1170, n. 3 (4th ed., updated Jan. 2015).

determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.'" Jones, 290 Ga. at 221.  As we stated in Sherman I,

> [t]he overriding issue in this case is whether the valuation method used by [the defendants] fairly and justly establishes the fair market value of a bond transaction leasehold estate such that the method is not "arbitrary or unreasonable." [Cit.]

Sherman, 288 Ga. at 90.  The other issue, raised in the plaintiffs' amended petition on remand following Sherman I, is whether certain properties held in fee simple by the DAFC have been and continue to be unlawfully exempted from ad valorem taxation.[4]   In connection with the resolution of these issues, SJN seeks a declaratory judgment (a) affirming the invalidity of the 50% ramp-up valuation method, both as employed in connection with the bond transaction leasehold estates here and in general; and (b) establishing DAFC's liability for back taxes on various properties as to which it has been unlawfully afforded an exemption from ad valorem taxes.  In addition, SJN seeks "a mandatory

---

[4] Specifically, SJN claims that various properties held by the DAFC fall within certain categories specified under state law as ineligible for exemption from ad valorem taxes.  See OCGA §§ 36-62-3, 36-62-2 (6) (H) (vi), (J) and (K).

injunction and/or writ of mandamus" to (a) restrain the FCBOA from using the 50% ramp-up valuation method in assessing the value of bond transaction leasehold estates; (b) compel the FCBOA to re-appraise all existing leasehold estates at issue here using an appraisal approach that comports with state law and to issue assessments for the collection of back taxes on such estates to the extent they have been previously under-appraised; and (c) compel the FCBOA to issue ad valorem tax assessment notices to the DAFC as to its non-tax-exempt properties for prior years and to commence such assessments for future years.

(a) We first address SJN's claims regarding the allegedly non-tax-exempt status of certain properties held by the DAFC. In support of its claims in this regard, the only evidence SJN has offered is the affidavit testimony of John Woodham, its own counsel of record. In his affidavit, Woodham identifies various properties owned by the DAFC which he claims constitute either office building or hotel facilities that are specifically excluded from the tax exemption afforded to most development authority-owned property. See OCGA §§ 36-62-3, 36-62-2 (6) (H) (vi) and (J). Woodham designates these properties via handwritten notations in the margins of a list of DAFC-owned properties, purportedly obtained from the FCBOA during discovery, attached as an exhibit

8

to his affidavit. In the affidavit, Woodham attests that he "personally reviewed the property record information" regarding the designated properties and opines on this basis that these properties are not tax exempt. SJN offers no other evidence in support of its claims in this regard.

Setting aside the questionable ethics of Woodham's assumption of the role as witness in a case he is prosecuting as counsel of record,[4] we find that Woodham's "testimony" is insufficient to create an issue of material fact on SJN's claims in regard to the tax-exempt status of the DAFC-owned properties at issue. See, e.g., Pfeiffer v. Ga. Dept. of Transp., 275 Ga. 827, 828-829 (2) (573 SE2d 389) (2002) (once a defendant on motion for summary judgment exposes an absence of evidence to support the plaintiff's case, the plaintiff must then "'point to specific evidence giving rise to a triable issue'"). Entirely absent is any factual basis for the conclusion that any of the properties in question actually possess the characteristics of an "office building" or "hotel facility" as defined in OCGA § 36-62-2 (6) (H) (vi) and (J). Woodham's "testimony" on this issue is nothing more than legal arguments lacking in evidentiary support;

---

[4] See Georgia Rules of Professional Conduct, Rule 3.7 ("[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness").

his affidavit is simply a legal brief cloaked under the solemnity of an oath. The fact that SJN could apparently find no witness or documentary evidence that would substantiate its claims on this issue, other than the self-serving so-called "testimony" of its own attorney, demonstrates the propriety of summary judgment on these claims. We therefore affirm the grant of summary judgment as to these claims.

(b) We now consider SJN's claims regarding the FCBOA's use of the 50% ramp-up formula in assessing the value of the bond transaction leasehold estates held by the private developers who are parties to the bond transactions here.

(i) Claims for injunctive relief. As an initial matter, the defendants contend, citing this Court's recent decision in Georgia Dept. of Natural Resources v. Center for a Sustainable Coast, 294 Ga. 593 (755 SE2d 184) (2014), that SJN's claims for injunctive relief are barred by sovereign immunity. We agree. In Sustainable Coast, this Court held that sovereign immunity, in its current incarnation under this State's Constitution, may be waived only by an act of the General Assembly. Id. at 598-601. Accordingly, we overruled precedent that had previously recognized a common law exception to sovereign

10

immunity for suits seeking injunctive relief against the State. Id. at 593, 599-602 (overruling Intl. Bus. Machines Corp. v. Evans, 265 Ga. 215 (453 SE2d 706) (1995)). Thus, after Sustainable Coast, injunction actions against the State, including those against State employees in their official capacity, see id. at 599, n. 4, may proceed only where such actions are expressly authorized under our Constitution or by a statute evincing the legislature's express intent to permit claimants to seek injunctive relief against the State. Accordingly, SJN's claims for injunctive relief are barred by sovereign immunity.

(ii) Claims for mandamus relief. Sovereign immunity does not, however, preclude SJN's claims for mandamus relief. See Southern LNG, Inc. v. MacGinnitie, 290 Ga. 204 (719 SE2d 473) (2011).[5] Our mandamus statute expressly authorizes claimants to seek relief against a public official "whenever . . . a defect of legal justice would ensue from [the official's] failure to perform or from improper performance" of "official duties." OCGA § 9-6-20. SJN, as a citizen and taxpayer of Fulton County, clearly has standing to seek the type of mandamus relief it requests here. See OCGA § 9-6-24 (conferring standing to

---

[5] Were we to hold otherwise, mandamus actions, which by their very nature may be sought only against public officials, would be categorically precluded by sovereign immunity.

seek mandamus relief on any person "interested in having the laws executed and the duty in question enforced"); Southern LNG, Inc. v. MacGinnitie, 294 Ga. 657 (2) (755 SE2d 683) (2014) (corporate taxpayer had standing to sue for mandamus to compel State Revenue Commissioner to recognize it as a "public utility" for ad valorem tax purposes).[6]

In order to be entitled to mandamus relief, a claimant must establish that "(1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief."  Bibb County v.

---

[6] We note that we have previously held that OCGA § 9-6-24 and its predecessor statute confer standing to seek enforcement of public duties not only via mandamus but also by injunction.  See, e.g., Arneson v. Bd. of Trustees of Employers' Retirement System of Ga., 257 Ga. 579 (2) (b), (c) (361 SE2d 805) (1987) (taxpayers generally have standing to seek to enjoin public officials from committing ultra vires acts); Griggs v. Green, 230 Ga. 257 (1) (197 SE2d 116) (1973) (taxpayer had standing to seek to enjoin taxing authorities from proceeding under allegedly void and illegal tax digest); Head v. Browning, 215 Ga. 263 (2) (109 SE2d 798) (1959) (taxpayers had standing to seek to enjoin State Revenue Commissioner from issuing liquor license to defendant).  In none of these cases did we address sovereign immunity, likely due, at least in part, to their timing in relation to the evolution of our doctrine of sovereign immunity and whether judicially-created exceptions to the doctrine – such as that for injunction actions – were recognized as valid.  See Sustainable Coast, 294 Ga. at 597-599 (examining history of sovereign immunity from its adoption in our common law in 1784, to its constitutionalization in 1974, and subsequent changes with the adoption of the Georgia Constitution of 1983 and further amendments in 1991).  Insofar as these and similar cases permitted the prosecution of injunction actions against state officials, they now stand abrogated by Sustainable Coast; however, to the extent these cases simply confirmed a taxpayer's standing to seek to enforce a public duty by way of some viable cause of action, they remain good law.

Monroe County, 294 Ga. 730, 734 (2) (755 SE2d 760) (2014). Pretermitting whether another adequate legal remedy is available here, we conclude, as explained below, that SJN has failed to come forth with evidence of a clear legal right to the relief it is seeking.

> A clear legal right to the relief sought may be found only where the claimant seeks to compel the performance of a public duty that an official or agency is required by law to perform. . . . Where performance is required by law, a clear legal right to relief will exist either where the official or agency fails entirely to act or where, in taking such required action, the official or agency commits a gross abuse of discretion.

Id. at 735. Here, SJN seeks to compel the FCBOA to fulfill its statutory duty in relation to the assessment of ad valorem taxes within its jurisdiction. The essence of this duty is to see that all taxable property within the county is assessed and returned at its fair market value and that fair market values as between the individual taxpayers are fairly and justly equalized so that each taxpayer shall pay as nearly as possible only such taxpayer's proportionate share of taxes.

OCGA § 48-5-306 (a); see also Ga. Const. of 1983, Art. VII, Sec. I, Par. III (requiring uniformity in taxation).  As to the fulfillment of this duty, we have held:

> Tax assessors are authorized to fix the fair market value of property for taxes from the best information obtainable.  This does not require the tax assessors to use any definite system or method, but demands only that the valuations be just and that they be fairly and justly equalized among the individual taxpayers . . . according to the best information obtainable.

(Citations and punctuation omitted.)  Colvard v. Ridley, 218 Ga. 490, 490 (1) (128 SE2d 732) (1962); accord Sherman, 288 Ga. at 91 ("[i]t is clear that county boards of tax assessors are not required to use any particular appraisal approach or method when determining the fair market value of property").

In sum, the FCBOA's duty is to assess all taxable properties within its jurisdiction at fair market value, utilizing the "best information obtainable."  In support of their motions for summary judgment, the defendants have adduced the testimony of two expert real estate appraisers, both of whom opine that the 50% ramp-up formula is an analytically sound approach that comports with standard appraisal practice and, in the words of one of these witnesses, "represents an appropriate, reasonable, and non-arbitrary simplified method of

arriving at the fair market value for tax purposes of the leasehold interest[s]" at issue. This Court has in fact previously endorsed the concept of a formula for the valuation of leasehold estates in property held in fee simple by a county development authority. See DeKalb County Bd. of Tax Assessors v. W.C. Harris & Co., 248 Ga. 277, 280-281 (3) (282 SE2d 880) (1981) ("[w]e do not find the method of valuation utilized . . . to be an arbitrary or unreasonable one, and . . . the trial court did not err in approving the formula adopted in these cases"); see also Coweta County Bd. of Tax Assessors v. EGO Products, Inc., 241 Ga. App. 85, 87 (1) (526 SE2d 133) (1999) (noting with approval county board of tax assessors' "long-standing policy of taxing leasehold interests in real property that are the subject of a financing agreement . . . at 50 percent of the appraised value for the term of the lease").

Not surprisingly, SJN's expert appraiser disagrees with the defendants' experts, contending that, because of the structure of the bond transaction and the terms of the operative agreements, virtually 100% of any leased property's value resides in the leasehold at all times during the term of the lease and that use of the 50% ramp-up formula thus systematically underestimates the value of the

leasehold estate.[7]  However, this witness, while assailing in the abstract the assumptions underlying the 50% ramp-up formula, admitted at his deposition that he has not actually appraised any of the leasehold estates involved in this case.  Critically, when this witness was asked point-blank whether the assessed values of any of the properties at issue here in any given tax year were incorrect, he replied that he did not know.

In the end, though much ink is spilled in the parties' debate over whether the 50% ramp-up formula, in the abstract, is the best — or even a valid — methodology for valuing the leasehold estates here, SJN's mandamus claims fail for the simple reason that it has adduced no evidence that any actual assessment of any particular property has been or is other than at fair market value.  SJN has thus failed to adduce any evidence that the FCBOA has failed to comply with its legal duty to "see that all taxable property within the county is assessed and returned at its fair market value."  OCGA § 48-5-306 (a).  On the evidentiary

---

[7] We note that the defendants moved in the trial court to exclude the testimony of SJN's expert as lacking the prerequisites for admissibility of expert testimony under OCGA § 24-7-702 (b).  As the trial court did not rule on this motion, we have no occasion to review this issue and thus assume for present purposes that this testimony would be admissible at trial.

record presented, SJN's claims for mandamus relief cannot withstand summary judgment.

(iii) Claims for declaratory relief. We have previously left unresolved the question of whether sovereign immunity generally bars claims against the State for declaratory relief. See Southern LNG, 290 Ga. at 205-206 and n. 1 (expressly sidestepping issue of whether declaratory judgment actions against the State are generally barred by sovereign immunity, but noting that this Court has in the past in certain contexts permitted declaratory judgment actions to proceed against state agencies and officials). But see DeKalb County School Dist. v. Gold, 318 Ga. App. 633, 637 (1) (a) (734 SE2d 466) (2012) (holding that "[o]ur Constitution and statutes do not provide for a blanket waiver of sovereign immunity in declaratory-judgment actions"). Under the rationale of Sustainable Coast, it appears that, absent a statutory provision affording claimants an express right to seek declaratory relief against the State, sovereign immunity would bar such claims. See Gold, 318 Ga. App. at 637 (noting that OCGA § 50-13-10 provides for specific waiver of sovereign immunity for declaratory judgment actions challenging state agency administrative rules).

Because this significant legal issue has received little attention in these proceedings and because these claims can be disposed of on other grounds, as discussed below, we decline to definitively resolve it here.

> Our Declaratory Judgment Act, OCGA § 9-4-2, provides that the superior courts may declare rights and other legal relations of any parties petitioning for declaratory relief in "cases of actual controversy," or when "the ends of justice require that the declaration should be made." The purpose of the Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." OCGA § 9-4-1. The proper scope of declaratory judgment is to adjudge those rights among parties upon which their future conduct depends.

Fourth Street Baptist Church of Columbus v. Bd. of Registrars, 253 Ga. 368, 369 (1) (320 SE2d 543) (1984). Accordingly, declaratory relief is proper only where the party seeking such relief faces some uncertainty or insecurity as to rights, status, or legal relations, upon which its future conduct depends. See, e.g., Baker v. City of Marietta, 271 Ga. 210, 214 (1) (518 SE2d 879) (1999) ("[w]here the party seeking declaratory judgment does not show it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper"); Fourth Street Baptist Church of Columbus, 253 Ga. at 369 (claims for declaratory relief were properly dismissed, where plaintiffs

"face[d] no uncertainty or insecurity with respect to their voting rights, nor any risk stemming from undirected future action"); <u>Henderson v. Alverson</u>, 217 Ga. 541 (123 SE2d 721) (1962) (declaratory judgment action could not be maintained where plaintiff failed to allege need for guidance as to his future conduct but rather merely sought declaration that legislative enactment was void). Here, SJN faces no uncertainty or insecurity as to any of *its own* future conduct, but rather seeks an adjudication only of issues that will impact the future conduct of the FCBOA. As such, SJN's claims for declaratory relief cannot be maintained, and summary judgment was properly granted thereon.

In summary, though we find error in the trial court's striking of the Schultz and Woodham affidavits, we nonetheless, for the foregoing reasons, affirm the grant of summary judgment to the defendants as to all of SJN's claims.

<u>Judgment affirmed. All the Justices concur.</u>

Decided March 27, 2015.

Mandamus. Fulton Superior Court. Before Judge Baxter.

Robert D. Feagin, John F. Woodham, Hurt Stolz, Irwin W. Stolz, Jr., for appellant.

Ichter Thomas, Cary Ichter, Cheryl M. Ringer, R. David Ware, Shalanda M. J. Miller, for appellees.

Alston & Bird, Glenn R. Thomson, Clark R. Calhoun, amici curiae.