**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 22, 2018**

# In the Court of Appeals of Georgia

A17A1843. COLEMAN, et al. v. GLYNN COUNTY, GEORGIA.

A17A1844. COLEMAN, et al. v. GLYNN COUNTY, GEORGIA.

A17A1845. COLEMAN, et al. v. GLYNN COUNTY, GEORGIA.

RAY, Judge.

J. Matthew Coleman, IV and Elizabeth Blair Coleman ("the Colemans") filed three class action lawsuits on behalf of themselves and all taxpayers similarly situated seeking refunds for taxes that were overpaid based on Glynn County's incorrect application of a local homestead exemption. On the parties' cross-motions for summary judgment in each case, the trial court entered a consolidated order denying the Colemans' motion and granting summary judgment to Glynn County. In three

related appeals, the Colemans appeal from the trial court's judgment.[1] In Case Nos. A17A1843, A17A1844, and A17A1845, the primary issue on appeal is whether the trial court erred in construing the terms of the homestead exemption. A secondary issue is whether the trial court erred in barring a portion of the asserted claims. These appeals are consolidated for the purposes of review. For the reasons that follow, we affirm in part and reverse in part in each case.

The record shows that in 2000 the Georgia Legislature passed House Bills 1690 and 1691, which were local legislation providing the residents of Glynn County with a homestead exemption from ad valorem property taxes for county and school purposes (hereinafter collectively referred to as the "Act" or the "Exemption"). The Act provides that the amount of the Exemption shall be "equal to the amount by which the current year assessed value of that homestead exceeds the base year assessed value of that homestead." Further, the term "base year" as defined in the Act "means the taxable year immediately preceding the taxable year in which the

---

[1] The three cases previously came before this Court on Glynn County's appeal from the trial court's order granting class certification in each case. In a consolidated opinion, we affirmed the class certification in each case. See *Glynn County v. Coleman*, 334 Ga. App. 559 (779 SE2d 753) (2015), cert. denied.

exemption under this Act is first granted to the most recent owner of such homestead."

On or about July 21, 2005, the Colemans purchased certain real property in Glynn County known as Tax Parcel Number 04-01187. The Colemans applied for the Exemption on February 1, 2006. Their application was granted in 2006, and the Colemans' homestead exemption was in effect for the 2006 tax year. However, Glynn County used and continues to use 2006, as opposed to 2005, as the base year for calculating the amount of their homestead exemption. The assessed value for the property in 2006 was $133,800, whereas the assessed value of the property in 2005 was $70,006.

On or about November 10, 2011, the Colemans filed a written request with the Glynn County Tax Commissioner, pursuant to OCGA § 48-5-380 (b), for a refund of the taxes that they overpaid in tax years 2008-2010 based on the use of the improper base year in calculating their exemption amount. Glynn County did not respond to their request. Consequently, the Colemans filed their first class action lawsuit against Glynn County on November 20, 2012, seeking a refund of all overpaid ad valorem taxes for tax years 2008-2010, as well as mandamus, declaratory, injunctive, and other equitable relief for the refund of all overpaid ad valorem taxes for tax years

3

2001-2010. Thereafter, the trial court entered an order certifying four classes, comprised of:

> Glynn County property owners receiving the [ ] Exemption in the calculation of their tax bills in [any year between 2001-2010] and for whom Glynn County used the year in which the [ ] Exemption was first granted as the Base Year rather than the immediately preceding year in calculating the exemption amount under the [ ] Act for property tax bills in [any year between 2001-2010] and for whom the value frozen in the year in which the [ ] Exemption was first granted is greater than the value in the immediately preceding year[.]

The first class is comprised of taxpayers who paid taxes between 2001-2007, which contains separate subclasses for each year. The second, third, and fourth classes are comprised of taxpayers who paid taxes in 2008, 2009, and 2010, respectively.

On or about November 20, 2012, the Colemans filed a written request with the Glynn County Tax Commissioner, pursuant to OCGA § 48-5-380 (b), for a refund of the taxes that they overpaid in tax years 2011-2012 based on the use of the improper base year in calculating their exemption amount. Glynn County did not respond to their request. Consequently, the Colemans filed their second class action lawsuit against Glynn County on November 27, 2013, seeking a refund of all overpaid ad valorem taxes for tax years 2011-2012, as well as mandamus, declaratory, injunctive,

and other equitable relief . The trial court granted class certification in the second lawsuit, defining that class as:

> Glynn County property owners receiving the [ ] Exemption in the calculation of their tax bills in 2011 or 2012 for whom Glynn County used the year in which the [ ] Exemption was first granted as the Base Year rather than the immediately preceding year in calculating the exemption amount under the [ ] Act for property tax bills in 2011 or 2012 and for whom the value frozen in the year in which the [ ] Exemption was first granted is greater than the value in the immediately preceding year.

On July 16, 2014, the Colemans filed their third class action lawsuit against Glynn County, seeking a refund of all overpaid ad valorem taxes for tax year 2013, later amended to include tax years 2014-2016, based on the continued use of the improper base year in calculating their exemption amount. The trial court granted class certification in the third lawsuit, ultimately defining that class as:

> Glynn County property owners receiving the [ ] Exemption in the calculation of their tax bills in 2013, 2014, 2015 or 2016 for whom Glynn County used the year in which the [ ] Exemption was first granted as the Base Year rather than the immediately preceding year in calculating the exemption amount under the [ ] Act for property tax bills in 2013, 2014, 2015 or 2016 and for whom the value frozen in the year

in which the [ ] Exemption was first granted is greater than the value in the immediately preceding year.

The Colemans and Glynn County filed cross-motions for summary judgment in each case. The primary issue was the proper interpretation of the term "base year" as it is defined in the Act, and a secondary issue was whether the plaintiffs could seek refunds for taxes payed more than three years before the demand for refund was made. After oral argument, the trial court ruled that Glynn County properly applied the Exemption and that the Coleman's base year was properly determined to be 2006, reasoning that "the effective date of [the Colemans'] exemption was January 1, 2007." The trial court further ruled that, even if the base year had been improperly determined under the Act, the Colemans would be barred from seeking a refund of taxes overpaid prior to 2008 and the class members would be barred from seeking a refund of taxes overpaid prior to 2010. Accordingly, the trial court entered a consolidated order denying the Colemans' motion for partial summary judgment and granting summary judgment to Glynn County. The Colemans' appeals ensued.

1. In several related enumerations of error, the Colemans contend that the trial court erred in construing the terms of the Act. We agree.

"Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met." (Citation omitted.) *Ga. Commercial Stores, Inc. v. Forsman*, 342 Ga. App. 542, 543 (803 SE2d 805) (2017). Furthermore, "the interpretation of a statute is a question of law, which is reviewed de novo on appeal. Indeed, when only a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." (Punctuation and footnotes omitted.) *Kemp v. Kemp*, 337 Ga. App. 627, 632 (788 SE2d 517) (2016).

When we interpret any statute or act of legislation,

> we necessarily begin our analysis with familiar and binding canons of construction. In considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. Toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. And when the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly.

7

(Punctuation and footnotes omitted.) Id. at 632-633.

Here, the Act specifically defines the term "base year" as "the taxable year immediately preceding the taxable year in which the exemption under this Act is first granted to the most recent owner of such homestead." The Colemans purchased their property in 2005; in so doing, they were certainly liable for a portion of the taxes in the 2005 tax year. Further, the Colemans applied for and were granted the Exemption in 2006, which was applicable for the 2006 tax year. Under a plain reading of the clear language of the Act, the term "base year" must be construed to mean the taxable year preceding the taxable year in which the homestead exemption was granted to the applicant. As to the Colemans, the correct base year for the purposes of the Exemption is 2005.

In granting summary judgment to Glynn County, the trial court appeared to engraft language onto the Act which would require an applicant for the Exemption to be the owner of the qualifying property on January 1 of the "base year," to apply for the homestead exemption in the "base year," and to maintain their application until the following tax year in order to receive the Exemption. There is simply no reasonable authorization for such an interpretation in this case. Based on the plain language of the Act, the "base year" is merely the taxable year immediately preceding

8

the taxable year in which the applicant was the owner of the property on January 1 – in other words, the year prior to the year in which the homestead exemption was granted. Accordingly, the trial court's summary judgment with regard to this issue in Case Nos. A17A1843, A17A1844, and A17A1845 must be reversed.

2. The Colemans next contend that the trial court erred: (i) in holding that they are barred from seeking a refund of taxes overpaid prior to 2008; and (ii) in holding that the class members would be barred from seeking a refund of taxes overpaid prior to 2010. We shall address each contention in turn.

As governmental bodies, the counties of this State are entitled to sovereign immunity and, thus, are not subject to suit for any cause of action unless provided for by statute. *McElmurray v. Augusta-Richmond County*, 274 Ga. App. 605, 609-610 (2) (a) (618 SE2d 59) (2005). OCGA § 48-5-380 is the statute under which taxpayers may seek refunds from counties and municipalities. "The statutory authorization to bring an action for a tax refund in superior court against a [county] is an express waiver of sovereign immunity, and the [county's] consent to be sued [for a tax refund] must be strictly construed." (Citations omitted.) *Sawnee Elec. Membership Corp. v. Ga. Dept. of Revenue*, 279 Ga. 22, 23 (2) (608 SE2d 611) (2005).

9

Under the respective versions of OCGA § 48-5-380 that apply to the class-action lawsuits at issue, a taxpayer may request a refund of illegally and erroneously assessed taxes or overpaid taxes from the county within three years of the payment of such taxes and then file suit if such refund request is denied or not timely addressed within a specified time period. See OCGA § 48-5-380 (b), (c). [2]

(a) *The Colemans* – Because OCGA § 48-5-380 (b) limits taxpayer recovery to payments made within three years of a written claim for refund, Glynn County's sovereign immunity would only be waived for the improper payments made within that three-year window. See *Webb v. Coweta County*, 178 Ga. App. 170, 170 (1), (2) (342 SE2d 345) (1986) (in tax refund action, taxpayer's right to recover is limited to the three-year window prior to the filing of his written claim for refund). As the record shows that the Colemans filed a written request with Glynn County on November 10, 2011, the trial court correctly concluded that the Colemans are barred from recovering any overpaid taxes prior to 2008. [3]

---

[2] For the version of OCGA § 48-5-380 in effect when the first and second lawsuits were filed, see Laws 2010, Act 670, § 7-1, eff. Jan. 1, 2011. The current version of OCGA § 48-5-380 was in effect at the time the third lawsuit was filed. See Laws 2014, Act 612, § 5, eff. July 1, 2014.

[3] To be precise, the Colemans would have no claim for any such taxes paid before November 10, 2008.

(b) *The class members* – The filing of the written claim for a refund by the Colemans under OCGA § 48-5-380 (b) also satisfied the class members' precondition for filing suit because the named plaintiffs in a class action lawsuit are generally permitted to act as representatives on behalf of the entire class and it would be untenable to require each class member to file individual written requests for a refund in order to participate in the class action. See *Barnes v. City of Atlanta*, 281 Ga. 256, 257-260 (1) (637 SE2d 4) (2006). However, our Supreme Court has held that it is the combination of the named plaintiffs' satisfaction of the precondition for suit *and* the subsequent filing of the actual lawsuit as a class action that places the governmental body on notice of the nature of the suit, the governing law, and the extent of the class. *Schorr v. Countrywide Homes Loans, Inc.*, 287 Ga. 570, 572-573 (697 SE2d 827) (2010). Thus, it appears that while the Colemans satisfied the precondition for the class members' participation in the lawsuits, it is actually the filing of the class action lawsuits that served as the class members' demand for refunds. To be consistent with the holdings in *Barnes*, supra, and *Schorr*, supra, we must conclude that it is

> the filing of the refund claims in the trial court by [the Colemans] who had exhausted their administrative remedies [that] satisfie[s] the exhaustion requirement on behalf of the [class members]. Therefore, OCGA § 48-5-380 (b) bars the refund claims of the [class] members . .

11

. for those taxes that were paid more than three years before the date on which the [Colemans] filed the complaint in this case.

*Barnes*, supra at 260 (1). As the record shows that the Colemans filed the first class-action lawsuit on November 20, 2012, the class members would only be barred from recovering tax refunds for payments made prior to November 20, 2009. Accordingly, the trial court erred in establishing 2010 as the cut-off point for the class members' claims.

(c) Lastly, the Colemans contend that any refunds for tax payments they and the class members made that fall outside of the three-year window under OCGA § 48-5-380 (b) may nevertheless be recoverable by way of mandamus, equity, injunction, or declaratory relief. We disagree.

"The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly *which specifically provides* that sovereign immunity is thereby waived and *the extent of such waiver*." (Emphasis supplied.) Ga. Const. Art. I, Sec. II, Par. IX (e). OCGA § 48-5-380 (b) provides an explicit, limited waiver of sovereign immunity to allow actions for the refund of taxes to those payments which are made within three years of a proper refund demand. The statute does not contain an unlimited waiver for any other action seeking to recover

12

taxes paid at *any* time outside of the three-year window. As noted earlier, "[t]he statutory authorization to bring an action for a tax refund in superior court against a [county] is an express waiver of sovereign immunity, and the [county's] consent to be sued [for a tax refund] must be strictly construed." (Citations omitted.) *Sawnee Elec. Membership Corp.*, supra at 23 (2). Furthermore, our Supreme Court has held that prior cases finding an exception to sovereign immunity for claims in equity were in error, and that "sovereign immunity is a bar to injunctive relief at common law[.]" *Ga. Dept. of Natural Resources v. Ctr. for a Sustainable Coast, Inc.*, 294 Ga. 593, 596-603 (2) (755 SE2d 184) (2014). And "[u]nder the rationale of *Sustainable Coast*, it appears that, absent a statutory provision affording claimants an express right to seek declaratory relief against [a county], sovereign immunity would bar such claims." (Citations omitted.) *SJN Props., LLC v. Fulton County Bd. of Tax Assessors*, 296 Ga. 793, 802 (2) (b) (iii) (770 SE2d 832) (2015).

Further, in order to obtain mandamus relief, "a claimant must establish that (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief." (Citation and punctuation omitted.) *SJN Properties, LLC*, supra at 800 (2) (b) (ii). Here, neither the Colemans nor the class members have a "clear legal right" to any tax refunds for payments made outside

13

the three-year window provided in OCGA § 48-5-380 (b). See generally *Webb*, supra at 170 (1), (2). To hold otherwise would render the provisions of OCGA § 48-5-380 (b) meaningless. Furthermore, "mandamus relief applies prospectively only. It will not lie to compel the undoing of acts already done[,] and this is so even though the action taken was clearly illegal." (Citation omitted.) *Atlanta Independent School System v. Lane*, 266 Ga. 657, 660 (6) (469 SE2d 22) (1996) (upholding denial of mandamus relief to taxpayer who sought to compel the repayment of illegally allocated tax payments). Therefore, it follows that the trial court did not err in disposing of the mandamus claim which sought to compel Glynn County to refund the taxes it had received outside of the three-year window set forth in OCGA § 48-5-380 (b).

*Case No. A17A1843 affirmed in part and reversed in part; Case No. A17A1844 affirmed in part and reversed in part; and Case No. A17A1845 affirmed in part and reversed in part. Dillard, C. J., and Self, J., concur.*

14