## A99A0845. HARDY v. THE STATE.
(522 SE2d 704)

PHIPPS, Judge.

George Washington Hardy was tried before a jury and found guilty of kidnapping with bodily injury, kidnapping, armed robbery, aggravated assault (three counts) and burglary (two counts). On appeal, Hardy asserts 15 enumerations of error, including the trial court's denial of his amended motion for new trial.

The following facts were presented at trial. On December 24, 1996, Matilde Nava was in her apartment with her three children, including Sergio (age three), and a neighbor, Santa Gonzales. At that time, she was separated from her husband, Chris Nava.

Two men came to the door of Ms. Nava's apartment asking for Chris Nava. Gonzales told the men that Chris did not live there. The two men left and then returned ten to fifteen minutes later. Gonzales answered the door. One of the two men (whom Ms. Nava identified as Hardy) pushed his way through the door with a gun in his hand, uttering profanities. Ms. Nava testified that Hardy put a gun to Sergio's head and asked for money. When Ms. Nava responded that she did not have any money, Hardy took her to the bedroom where he

took the money in her wallet, her bracelet from her arm, and money and a necklace from the top of the television. Hardy then returned Nava to the living room and took Gonzales into the bedroom at gunpoint.

Gonzales testified that one of the men[1] pushed her to the bed, causing her to fall backwards on the floor and bruise her back. She stated that when she stood up he pushed her back onto the bed and removed her pantyhose and girdle. While she was lying on the bed, he said "I'm going to f— you." The assailant backed off when Gonzales told him she had cancer, but told her "I'm going to f— your friend."

Hardy then took Nava back to the bedroom, pushed her to the bed and demanded to see her "panocha," a Spanish term for vagina. Nava stated that Hardy forced her legs apart, pushed her panties to the side and touched her vagina with the gun. She then kicked him "in his part." While Hardy and Nava were struggling, the telephone rang and Nava told Hardy that it was the home alarm. At that point or shortly thereafter, both men left the apartment.

Hardy's accomplice, who did not participate in the incidents outlined above, confirmed that Hardy pushed his way into the apartment with a gun in his hand, asked the two women for money and jewelry, and took each of the women into the bedroom separately. He did not see what went on in the bedroom between Hardy and either woman.

Hardy testified that he had given Chris Nava money to buy drugs earlier that day, and that he went to the apartment that evening to meet Chris and pick up the drugs. Hardy pulled out his gun on the way into the apartment and asked if Chris was there. When the women said no, he assumed they were lying and proceeded to search the bedroom and another room. Hardy testified that he and his accomplice left the apartment without taking any money or jewelry. He denied pointing his gun at a child, making anyone move at gunpoint or harming anyone. Hardy admitted he went to the apartment with the intent of scaring Chris Nava in order to obtain his drugs but denied any intent to scare anyone else.

Hardy testified that he spoke to a detective about the incident prior to his arrest and told him that a man named Andy must have done it so they would arrest Andy. The jury also heard a tape of Hardy's confession, which was ruled voluntary by the trial court after a *Jackson-Denno* hearing was held outside the presence of the jury. On tape, Hardy admitted that the previous statement made to the

---

[1] Gonzales testified that she was not able to identify Hardy at trial because he was wearing a hooded sweatshirt on the night in question.

detective was false. Hardy stated that he went to the apartment on December 24, 1996, to take drugs from Chris Nava and that he intended to use his gun to scare him if necessary. Hardy also stated that when he was inside the apartment, he took the women into the bedroom one at a time. He denied taking money or jewelry from the women, denied pointing a gun at a child and denied asking to see either woman's vagina or ripping off anyone's pantyhose.

Hardy testified that he confessed so he would be locked up because he was afraid that Chris Nava and other men were going to kill him. During the *Jackson-Denno* hearing, Hardy's attorney attempted to have the confession suppressed based on Hardy's testimony that he was intoxicated at the time and did not understand fully his *Miranda* rights.

We address Hardy's separate enumerations of error as follows.

1. Hardy contends the judge abused his discretion by requiring him to wear a shock belt at trial, but did not raise the issue until the filing of his amended motion for new trial. Testimony given at the motion for new trial hearing supports a finding that the shock belt was not visible to the jury. A shock belt is prejudicial to a defendant only when it is visible to the jury. *Brown v. State*, 268 Ga. 354, 359 (7) (490 SE2d 75) (1997); see *Young v. State*, 269 Ga. 478, 479 (2) (499 SE2d 60) (1998). Thus, the judge did not abuse his discretion by requiring Hardy to wear a shock belt at trial or in denying Hardy a new trial on this ground.

Hardy also claims ineffective assistance of counsel based on his trial counsel's failure to object to the use of the shock belt at trial. Because we find that Hardy was not prejudiced by the use of the shock belt, this claim also fails. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

2. Hardy contends the judge erred by sustaining the prosecutor's objection to a question posed by defense counsel without requiring him to state a basis on the record. Because the basis for the objection was apparent from the judge's ruling on another objection by the prosecuting attorney immediately preceding the one at issue, we find no error.

3. Hardy contends the judge erred in allowing the prosecutor to impeach him with statements made during the *Jackson-Denno* hearing. Hardy objects to the prosecutor's reference to the *Jackson-Denno* testimony because he contends it was not inconsistent with his other statements.

We find, however, that the *Jackson-Denno* testimony did include prior contradictory statements and was therefore admissible at trial. See *Brown v. State*, 226 Ga. App. 140 (486 SE2d 370) (1997). Hardy's *Jackson-Denno* testimony that he was so drunk he did not know what he was doing contradicts his trial testimony that he purposely lied in

order to be arrested. We find no error in admitting this testimony or in the failure to object to its admission.

4. Hardy contends the judge erred in failing to give curative instructions in several instances.

(a) During the trial, one of the jurors saw the criminal trial calendar, which included Count 9 (possession of a firearm by a convicted felon) as one of the charges against Hardy. Hardy contends that curative instructions should have been issued to avoid any improper influence on the jury. There is no evidence that any of the jurors knew what the ninth count was or that they discussed it substantively. In addition, the juror who saw the calendar stated during questioning outside the presence of the other jurors that his ability to be fair and impartial was not affected. As a result, the failure to give curative instructions was not error.

(b) At trial, Hardy's counsel successfully moved to have Count 9 redacted from the original indictment. Hardy's counsel reviewed the redacted indictment before it went to the jury and determined that it had been redacted so that he could not read any part of Count 9. Nine months later, at the motion for new trial hearing, Hardy's trial counsel reexamined the redacted indictment and was able to read through the correction fluid by holding it up to the light.

Hardy contends the judge erred in failing to give curative instructions regarding the removal of Count 9 from the indictment. Because there is no evidence that Count 9 was visible at the time of trial, when the jury had access to the indictment, we find that no further action by the judge or trial counsel was necessary.

(c) Hardy contends the judge should have issued curative instructions regarding the shock belt. Without evidence that any of the jurors saw the shock belt, curative instructions would have only informed the jury that defendant was being restrained and thereby emphasized the alleged error. *Griggs v. State*, 181 Ga. App. 618, 619 (2) (353 SE2d 97) (1987).

(d) The same juror who saw the court calendar also saw Hardy in the sheriff's patrol car one morning before trial. Hardy claims the judge should have asked the juror if he discussed seeing Hardy with any of the other jurors and should have instructed him not to let it influence his decision. Because the juror testified only that he saw Hardy in the patrol car and did not mention seeing him wearing shackles, there was no reason to inquire about discussions with other jurors. When asked if the event would cause him not to be completely fair and impartial in the case, the juror said no. No further action was required by the judge or trial counsel.

5. Hardy asserts ineffective assistance of counsel based on his trial counsel's withdrawal of a request to charge that supplied the standard for voluntariness of post-arrest statements. At the motion

for new trial hearing, Hardy's trial counsel testified that he withdrew the request because there was no credible evidence that Hardy's *Miranda* rights had been violated or that Hardy's statements were not voluntary.

To establish ineffectiveness of trial counsel, Hardy must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland,* supra at 687. The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. at 687-689. The test for reasonable attorney performance is " 'whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .' " (Citations omitted.) *Stansell v. State,* 270 Ga. 147, 150 (2) (510 SE2d 292) (1998).

Because Hardy's trial counsel had unsuccessfully attacked the voluntariness of the post-arrest statements during the *Jackson-Denno* hearing, his belief that there was no credible evidence that the statements were not voluntary is reasonable. Under the circumstances, the decision to withdraw the charge did not amount to the deficient performance necessary to meet the *Strickland* standard for showing ineffective assistance of counsel.

6. Hardy contends the judge's charge on impeachment was improper because it included a reference to impeachment by prior conviction of a crime of moral turpitude. He claims that although no proof was offered that he was a convicted felon, the front of the indictment, which he claims was improperly redacted before being presented to the jury, and the court's calendar of cases improperly indicated that he was a convicted felon and the charge may have led the jury to believe that they were authorized to disregard Hardy's testimony.

The jury charge included the following instruction on the methods of impeachment:

A witness may be impeached in several ways. One is by disproving the facts to which the witness testified. Another is by proof that the witness has been convicted of a crime involving moral turpitude. And, finally, by proof of contradictory statements previously made by the witness as to matters relevant to the witness' testimony and to the case.

Immediately following this charge, the judge gave instruction on the use of good character evidence, how prior contradictory statements may be used, and how impeachment may be used to disprove facts. No further reference was made to impeachment by proof of conviction

of a crime of moral turpitude.

We agree that the judge erred in including a charge on impeachment by proof of conviction of a crime of moral turpitude because Count 9, possession of a firearm by a convicted felon, was not part of this case and no certified copy of any such conviction was ever introduced into evidence at trial. See *Ledesma v. State*, 251 Ga. 885, 888 (4) (311 SE2d 427) (1984). But Hardy is not entitled to a new trial "simply because the charge on that method of impeachment was not authorized by the evidence and was, therefore, erroneously given in this case." *Sultenfuss v. State*, 185 Ga. App. 47, 50 (5) (363 SE2d 337) (1987). Giving "an unauthorized charge on an unavailable method of impeachment is generally harmless error. [Cits.]" *Francis v. State*, 266 Ga. 69, 72 (3) (463 SE2d 859) (1995).

The erroneous portion of the charge was no more than a passing general reference that was followed by extensive instructions regarding the two viable methods of impeachment, thus mitigating any harmful effect. *Sultenfuss*, supra at 51; *Nunery v. State*, 229 Ga. App. 246, 247 (2) (493 SE2d 610) (1997). The applicable standard for harmless error in jury instructions as applied to criminal cases is whether it is highly probable that the error did not contribute to the verdict. Id. Considering the charge as a whole, we conclude that the erroneous charge was harmless.

7. Hardy objects to the judge's use of a preprinted verdict form, which included the following:

Possible verdicts:
(1) Guilty, or (2) Not Guilty
We, the jury, find the Defendant _____.

The jury completed the form by filling in Guilty or Not Guilty under each count listed.

Hardy relies on *Smith v. State*, 249 Ga. 228, 232 (5) (290 SE2d 43) (1982), in which the court noted that particular attention should be given when using preprinted verdict forms, "lest the jury draw an inference, however unfounded, of pre-disposition on the part of the trial judge." Recognizing that there was no such evidence in that case, the court stated that some jury could possibly "perceive the antecedence of the word 'guilty' over the words 'not guilty' to be expressive of the view of the court" and stated that it would be safer to omit the words guilty or not guilty entirely. Id.

Recently, in *Rucker v. State*, 270 Ga. 431, 435 (5) (510 SE2d 816) (1999), the Supreme Court of Georgia ruled that merely listing the option of "guilty" prior to "not guilty" on a preprinted verdict form does not render the verdict form misleading so as to constitute reversible error. The standard applied in *Rucker* is whether

the form would mislead jurors of reasonable understanding, or the trial court erroneously instructed the jury on the presumption of innocence, the State's burden of proof, the possible verdicts that could be returned, or how the verdict should be entered on the printed form.

Id. See also *Harris v. State*, 202 Ga. App. 618, 621 (5) (414 SE2d 919) (1992) (on its face, preprinted verdict form containing words "guilty" and "not guilty" not misleading, inaccurate or suggestive of a verdict).

Applying the *Rucker* standard, we find that the preprinted verdict form in this case was not misleading as it clearly set out the available options and required the jury to write in "guilty" or "not guilty" for each count. Further, there is no evidence that the trial judge erroneously instructed the jury on the presumption of innocence, the State's burden of proof, the possible verdicts that could be returned, or how the verdict should be entered on the printed form. We therefore find no error in the trial court's use of a preprinted verdict form.

8. Hardy contends the trial court erred in denying his amended motion for new trial on numerous grounds, most of which have been disposed of above. His only remaining claims challenge the sufficiency of the evidence as to Count 1 (kidnapping of Santa Gonzales with bodily injury), Count 2 (kidnapping of Matilde Nava), Count 3 (armed robbery of Matilde Nava), Count 4 (assault with intent to rape Matilde Nava), Count 5 (assault with intent to rape Santa Gonzales) and Count 6 (aggravated assault upon Sergio Nava).

On appeal, we do not weigh evidence or resolve conflicts in trial testimony when the sufficiency of the evidence is challenged. *Dismuke v. State*, 261 Ga. 254 (1) (403 SE2d 812) (1991). Instead, the evidence must be viewed in the light most favorable to the prosecution to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). Viewed in this light, we hold that the evidence was sufficient to sustain the convictions.

"A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." OCGA § 16-5-40 (a). Hardy contends he could not have abducted someone while allowing her to remain in her own house. However, movement for a short distance satisfies the asportation element of the crime. See *Ellis v. State*, 211 Ga. App. 605, 608 (2) (440 SE2d 235) (1994). In *Ellis*, the forcible movement of the victim from her den to her bedroom was sufficient evidence that she was forcibly abducted and held against her will.

The same movement by Hardy of Nava and Gonzales at gunpoint, including the injuries sustained by Gonzales, provide sufficient evidence to support the kidnapping counts.

Hardy contends the armed robbery count must fail because his accomplice never saw him with the victim's money or jewelry. Armed robbery occurs when someone, with an intent to commit theft, takes the property of another from the person or the immediate presence of another by use of an offensive weapon. OCGA § 16-8-41 (a). Nava's testimony that Hardy took the money in her wallet, her bracelet from her arm, and money and a necklace from the top of the television in the next room is sufficient to support the verdict. *Collier v. State*, 232 Ga. 282, 283 (1) (206 SE2d 445) (1974).

Aggravated assault occurs where a person commits an act that places another in reasonable apprehension of immediately receiving a violent injury (assault), which is aggravated by (1) an intention to rape or (2) use of a deadly weapon. OCGA §§ 16-5-20 (a) (2); 16-5-21 (a) (1), (2). Hardy contends the "intent to rape" element of this crime has not been met because sexual conquest was not his motivation and a desire to see someone's private part is not the same as the desire to penetrate it. The evidence that Hardy held both women at gunpoint and attempted to remove or did remove some of their underclothes is sufficient to support the convictions for assault with intent to rape. See *Miller v. State*, 228 Ga. App. 754, 755 (1) (492 SE2d 734) (1997); *Middlebrooks v. State*, 156 Ga. App. 319, 320 (1) (274 SE2d 643) (1980).

Hardy claims that the evidence is insufficient to support the assault with a deadly weapon count because he testified that he did not point a gun at Sergio Nava and the child did not testify. Viewing the evidence (including testimony that Hardy put a gun to Sergio Nava's head and asked for money) under the appropriate standard, we conclude that it was sufficient to support the conviction on this count.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 21, 1999 — 

*Lloyd J. Matthews,* for appellant.

*Tommy K. Floyd, District Attorney, Gail M. Travillian, Assistant District Attorney,* for appellee.