A04A0760. McCANNON v. WILSON.
(600 SE2d 796)

MILLER, Judge.

Richard McCannon appeals from an adverse jury verdict in his personal injury suit against Dennis Wilson arising out of a car accident involving only the Mustang driven by Wilson. McCannon contends the trial court erred by denying his motion in limine and in its charge to the jury. We discern no error and affirm.

The record shows that the accident occurred nine days after Wilson purchased an eight-cylinder Mustang with a 5.0 liter engine. Both Wilson and McCannon were NASCAR fans and McCannon testified that he liked fast cars. On the day of the accident, Wilson was driving his Mustang and McCannon was the passenger. After looking for jobs in Athens, the two men decided to buy some beer and Wilson

---

[5] While *Roberson* is physical precedent only, the special concurrence did not take issue with this point of law.

bought a twelve-pack. The two men drove around and drank beer for a while until Wilson drove to his cousin's home. There was testimony that by that time, both men had drunk anywhere from two to four beers. There was testimony that both men continued to drink while visiting with Wilson's cousin.

Wilson's cousin testified that he told Wilson "he didn't need to be drinking and out there on the road." In his opinion, Wilson was "drunk" and "pretty obviously impaired." Wilson admitted that his cousin told him he should not be driving because he was drinking.

The cousin also testified that he told McCannon "he was welcomed [sic] to get out and use the phone, or whatever, and call somebody to come get him, because he was a fool to get in [sic] the road with [Wilson]." McCannon denied being told this.

Wilson testified that after leaving his cousin's house, he bought another 12-pack of beer because they had run out of beer. He then drove the car and parked it in the middle of the creek and "drank a couple of beers or so." McCannon testified that they did not purchase any more beer or go to the creek. He did acknowledge that they continued to ride around and drink beer from the original 12-pack.

Wilson testified that after leaving the creek, they drove on dirt roads that forced them to drive slowly for about a half hour. When they turned onto the paved road on which the accident occurred, McCannon said, "Let's see what you got," which Wilson interpreted as a request to "mash on the motor." Wilson accelerated to around 100 mph and McCannon said, "Is that all you got?" Wilson then accelerated to around 120 mph when the accident occurred. Wilson testified that he lost control and went off the road when he tried to avoid a deer that had darted into the road and then reversed course.

McCannon testified that he was reaching for a jacket in the back seat when the accident occurred and did not know how it happened. He denied asking Wilson how fast his car could go and also denied knowing that Wilson was speeding at the time of the accident.

Both Wilson and McCannon denied that Wilson was too drunk and impaired to drive at the time of the accident. McCannon testified that he would never ride with someone who was intoxicated, explaining that "drinking and being drunk is two different things."

The state trooper who responded to the accident arrived almost an hour after the accident. Both Wilson and McCannon had already been taken to the hospital when he arrived. He testified that he looked at the physical evidence, made measurements, and that this evidence indicated that the Mustang was traveling at an excessive speed. He also found no skid marks that would indicate braking or swerving before the accident. He then went to the hospital and obtained a blood sample from Wilson to test his blood alcohol level, which was below the legal limit at the time of the test. Photographs

of the Mustang taken after the accident showed a twelve-pack carton in the front seat and another twelve-pack carton, as well as a six-pack carton, in the back seat.

1. McCannon contends the trial court erred by denying his motion in limine to exclude references to his parole status at the time of the accident. We find no merit in this contention because the record before us contains no ruling on McCannon's motion in limine. The record citation provided by McCannon refers this Court to his motion only, not an actual adverse ruling by the trial court. "Error must be shown affirmatively by the record, and not by mere recitations in a brief." (Citations and punctuation omitted.) *Henry v. Medical Center*, 216 Ga. App. 893, 894 (1) (456 SE2d 216) (1995). Moreover, "[a]s appellate courts, we are courts for the correction of errors of law made by the trial courts. . . . An error of law has as its basis a specific ruling made by the trial court." (Citation omitted.) *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999). Without a ruling by the trial court, there is nothing for us to review.

To the extent McCannon argues that he was harmed by Wilson's passing reference to his parole status while being cross-examined by McCannon's counsel, he has waived the right for this Court to review this claim because he failed to object to the allegedly harmful and unresponsive testimony. See *Sharpe v. Dept. of Transp.*, 267 Ga. 267, 270 (1) (476 SE2d 722) (1996).

2. McCannon contends the trial court erred by giving the entire pattern impeachment charge because some of the impeachment methods did not apply to the facts of this case. Specifically, he objects to the trial court charging the jury that a witness can be impeached with his general bad character or conviction of a crime involving moral turpitude. As McCannon waived his right to claim error from the portion of the charge relating to general bad character by failing to object to this portion of the charge below, we will only consider the portion of the charge relating to impeachment by crimes involving moral turpitude. See *Wigley v. Hambrick*, 193 Ga. App. 903, 906 (6) (389 SE2d 763) (1989) (holding that "[t]he objection . . . on appeal not having been made below, there is nothing to review") (citation omitted).

We agree with McCannon's assertion that this portion of the charge was not authorized by this case. "This would follow, if for no other reason, from the fact that no certified copy of any prior conviction of any witness was ever introduced into evidence in the . . . trial." (Citation omitted.) *Sultenfuss v. State*, 185 Ga. App. 47, 50 (5) (363 SE2d 337) (1987). "It does not follow, however, that the giving of this charge mandates a reversal. The giving of an unauthorized charge on

an unavailable method of impeachment is generally harmless error." (Citations omitted.) *Francis v. State*, 266 Ga. 69, 72 (3) (463 SE2d 859) (1995).

The trial court's charge mentioned this impeachment method only one time and it "was no more than a passing general reference." (Citations omitted.) *Hardy v. State*, 240 Ga. App. 115, 119-120 (6) (522 SE2d 704) (1999). "Under these circumstances, the contested portion of the charge was at most merely irrelevant, being one of a number of stated methods of impeachment. Thus, taking the charge as a whole, there was no reversible error." (Citation omitted.) *Francis*, supra, 266 Ga. at 72 (3). See also *Hardy*, supra, 240 Ga. App. at 119-120 (6) (no harmful error resulted from inapplicable charge on impeachment with crimes of moral turpitude even though the indictment, which was presented to the jury, indicated that defendant was a convicted felon).

3. McCannon contends the trial court erred in giving the suggested pattern jury charge on "Negligence — Duty to Exercise Care of Own Safety" because he objected to the following emphasized portion of the charge:

> Every person has a duty to exercise ordinary care for his or her own safety. *If you should determine from the evidence that the plaintiff failed to use ordinary care, and this failure was the sole proximate cause of the plaintiff's injuries, then the plaintiff could not recover from the defendant.*

McCannon argues that his alleged encouragement of speeding could not have been the sole proximate cause of the wreck since he was "merely a passenger" and was not driving at the time of the wreck. We disagree. McCannon's argument ignores that there was evidence from which the jury could infer that McCannon should have known that Wilson's driving ability was impaired by drinking, that he had an opportunity to get out of the car, which he declined, and that the accident was caused by Wilson's impaired state. "What amounts to proximate cause is undeniably a jury question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent." (Citations and punctuation omitted.) *Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862) (2003).

4. In several enumerations of error, McCannon claims the trial court erred by using in its charge to the jury the suggested pattern charges on "Negligence — Equal Negligence — No Recovery," "Negligence — Comparative Negligence," "Negligence — Avoidance of Consequences," and "Negligence — Assumption of Risk," as well as a nonpattern charge on the "Duty of Guest Passenger with Respect to

Negligence of Driver." According to McCannon, these charges were not properly adjusted to the facts of the case and unwarranted based on our opinion in *Braswell v. Clayton*, 238 Ga. App. 302, 303-304 (2) (518 SE2d 714) (1999). However, McCannon relies on his own favorable testimony that he did not know Wilson was speeding, that he did not encourage any speeding, and that Wilson was not drunk to support this argument. However, there was ample evidence contradicting McCannon's testimony and the trial court did not err in giving these charges. See *Cullen v. Timm*, 184 Ga. App. 80, 81 (1) (360 SE2d 745) (1987) (trial court properly charged jury on comparative negligence and assumption of risk when passenger encouraged driver to run red light).

Our opinion in *Braswell*, supra, is distinguishable and does not demand a different result because there was no evidence in that case that the driver and passenger had been drinking or that the passenger encouraged the driver to speed and drive in a reckless manner.

5. McCannon contends the trial court should not have given the following charge on the duty of a guest passenger with respect to the negligence of the driver because it was an incomplete statement of the law:

> I charge you that when an adult guest passenger knows, or by the exercise of ordinary care should know on account of his host driver's condition, the speed at which the automobile is being driven, or other circumstances connected with its operation that he is exposed or about to be exposed to peril, the guest is required to do whatever an ordinarily prudent person similarly situated would do for his own protection.

This charge was based on statements made by this court in *Smith v. Harrison*, 92 Ga. App. 576, 580 (4) (89 SE2d 273) (1955). McCannon contends the trial court should have included additional language from the *Smith* case. However, McCannon failed to make this request below. As a result, we cannot consider it for the first time on appeal. See OCGA § 5-5-24 (a); *Goodyear Tire & Rubber Co. v. Johnson*, 120 Ga. App. 395, 397-398 (3) (170 SE2d 869) (1969). "The rationale underlying the requirement that the objection be sufficiently specific is to insure that the trial judge is afforded an opportunity to correct any error in the instructions prior to verdict so that the necessity of an appeal will be obviated." (Citations omitted.) *Hilliard v. Canton Wholesale Co.*, 151 Ga. App. 184, 186 (3) (259 SE2d 182) (1979).

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

820

*Hudson, Montgomery & Kalivoda, Richard F. Connelly, Jr.,* for appellant.

*Blasingame, Burch, Garrard, Bryant & Ashley, Andrew J. Hill, Josh B. Wages,* for appellee.