**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 16, 2019**

# In the Court of Appeals of Georgia

A19A1388. BUSH v. EICHHOLZ et al.

MILLER, Presiding Judge.

Reginald Bush filed a civil action against The Eichholz Law Firm, P.C. ("the Eichholz firm") and David Eichholz, alleging legal malpractice and fraud. Bush now appeals from the trial court's grant of summary judgment to the appellees. Having reviewed the record, we determine that the trial court properly granted summary judgment because Bush's termination of the appellees severed any potential liability for legal malpractice and Bush's fraud claim fails as a matter of law. We therefore affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant."

(Citation omitted.) *Williams v. City of Atlanta*, 342 Ga. App. 470 (803 SE2d 614) (2017).

So viewed, the record shows that Bush is a longshoreman by profession, and on May 22, 2014, he was operating a chassis truck at a terminal owned by the Georgia Ports Authority. When Bush pulled the truck into the terminal bay, a group of stevedores began unlocking the pins from the truck so that the crane operator could lift the cargo container from the truck. Bush saw that the stevedores were having difficulties with one of the pins before the "flag guy" directed the crane operator to slowly pick up the container. The crane operator, a Georgia Ports Authority employee, then began lifting the container, but also picked up the truck with Bush sitting inside. The crane operator lifted the truck twice before returning it to the ground, at which point Bush fell from the truck seat and injured his back.

In July 2014, Bush retained the Eichholz firm to represent him in a workers' compensation action and in connection with any tort claims arising from his injuries. The Eichholz firm sent a letter to the Georgia Department of Administrative Services ("the Department"), dated February 23, 2015, indicating that it had been retained to represent Bush and that the letter served as the ante litem notice required by OCGA § 50-21-26. The ante litem notice explained that a crane had lifted and dropped the

truck that Bush had been driving, that Bush would seek to recover for his injuries and damages, and that a claim was being asserted in the amount of $1 million. The Department and the Georgia Ports Authority responded to Eichholz by letter, acknowledging receipt of the ante litem notice and indicating that it had investigated the incident and concluded that the crane operator was not negligent.

After receiving this letter, the Eichholz firm sought advice from counsel in deciding whether it would litigate Bush's tort claim against the Georgia Ports Authority. A case manager and paralegal at the Eichholz firm averred that in August 2015, she spoke with Bush via telephone, as directed by Eichholz, "and explained to him that [the Eichholz law firm] and Mr. Eichholz would no longer represent [him] in connection with his prospective personal injury claim against the [Georgia Ports Authority]." She also averred that she explained to Bush that the personal injury claim may be subject to a time limitation, and that he should consult another attorney as soon as possible regarding representation if he wished to pursue the claim. She then sent a letter to Bush by certified mail, dated August 25, 2015, indicating that the Eichholz firm was still representing him in his workers' compensation action, but not with regard to his "date of loss." Bush, however, averred that he neither signed for

3

nor received this letter, and he also testified that he did not recall having the above-mentioned telephone conversation.

Ultimately, Bush grew "[d]issatisfied with Eichholz," and, in either late August or early September 2015, consulted with another firm, Schneider Hammers, LLC, concerning his claims. An attorney with Schneider Hammers averred that when Bush contacted the firm, he asked for assistance with a workers' compensation action and a tort claim against the Georgia Ports Authority. Schneider Hammers sent Bush a "new client package" containing two retainer agreements, one of which was a personal injury retainer agreement for the tort claim. Bush signed the personal injury retainer agreement and returned it to the Schneider Hammers office. Bush's wife also sought and received a disk from the Eichholz firm containing "everything in [Bush's] file."

Bush testified that Schneider Hammers "wanted to go over the documents to see what Eichholz had" but his wife had misplaced the disk from the Eichholz firm, and neither he nor his wife contacted the Eichholz firm for a replacement disc because he was "fed up with it. . . ."[1] Schneider Hammers reviewed the documents

---

[1] Bush testified that the disk was misplaced at either the end of 2015 or in early 2016. We cannot discern from the record precisely when Bush's wife received the disk from the Eichholz firm.

4

that Bush had sent to the office, assumed that the documents comprised Bush's case file, and when they did not see an ante litem notice, the firm concluded that one had not been sent. Thus, Schneider Hammers elected not to pursue the tort claim against the Georgia Ports Authority, and when Bush consulted with another attorney in 2016, he learned that the statute of limitations had expired.

Bush filed suit against Eichholz and the Eichholz firm, stating that he "discharged the [d]efendants effective August[] 2015," but simultaneously alleging that they had committed legal malpractice and fraud. Bush claimed that the appellees had sent a deficient ante litem notice, and as a result of the appellees' negligence in representing him, he no longer had a viable claim against the Georgia Ports Authority. Bush also claimed that the appellees "run a settlement mill fueled by television and billboard advertising[,]" that their advertising was false and misleading, and that he relied on the advertisements when he retained the Eichholz firm to aggressively pursue his tort claim against the Georgia Ports Authority.

The appellees filed a motion for summary judgment, and, after a hearing, the trial court granted the motion and denied Bush's motion for reconsideration. The trial court determined that the ante litem notice that the Eichholz firm sent was not legally deficient, that Bush had stated that he discharged the appellees in August 2015, and

5

that Bush hired a new law firm to represent him on his tort claim approximately nine months prior to the expiration of the limitation period. The trial court also found that the appellees had not committed any fraud so as to injure Bush. Bush then appealed.

1. Bush contends that the trial court erred in ruling that the ante litem notice was not deficient and argues that the appellees' failure to timely serve a compliant ante litem notice caused him to forfeit his tort claim against the Georgia Ports Authority. The trial court correctly found that the ante litem notice was not deficient.

"OCGA § 50-21-26 (a) specifies a detailed procedure for notifying the state of a claim before filing a lawsuit against it." (Citation omitted.) *Perdue v. Athens Technical College*, 283 Ga. App. 404 (641 SE2d 631) (2007). "Subsection (a) (5) sets out the information which the notice of claim shall state, to the extent of the claimant's knowledge and belief and as may be practicable under the circumstances." (Citation and punctuation omitted.) Id. at 405. Specifically, the notice must state:

> (A) The name of the state government entity, the acts or omissions of which are asserted as the basis of the claim; (B) The time of the transaction or occurrence out of which the loss arose; (C) The place of the transaction or occurrence; (D) The nature of the loss suffered; (E) The amount of the loss claimed; and (F) The acts or omissions which caused the loss. The purpose of these requirements is to ensure that the

state receives adequate notice of the claim to facilitate settlement before the filing of a lawsuit.

(Citation and punctuation omitted.) Id. "It is well established that strict compliance with the notice provisions is a prerequisite to filing suit under the [Georgia Tort Claims Act ("GTCA")], and substantial compliance therewith is insufficient." (Citation omitted.) *Ga. Dept. of Transp. v. Griggs*, 322 Ga. App. 519, 520 (745 SE2d 749) (2013).

> But in requiring that notice be to the extent of the claimant's knowledge and belief and as may be practicable under the circumstances, the Act's ante litem notice provisions clearly contemplate the possibility that a claimant may have imperfect information regarding various facets of [his] claim at the time the notice is submitted.

(Citation and punctuation omitted.) Id. at 521.

a. First, Bush unpersuasively contends that the ante litem notice did not inform the State of the nature of his injuries. In Bush's view, the appellees merely asserted that he suffered "severe injuries in a crane incident," which was insufficient.

As explained above, the ante litem notice must state the "nature of the loss suffered." OCGA § 50-21-26 (a) (5) (D). For purposes of the GTCA, the term "loss" means "personal injury; disease; . . . lost wages and economic loss to the person who

7

suffered the injury, disease, or death; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence." OCGA § 50-21-22 (3).

Here, the ante litem notice specified that Bush would seek to recover for his injuries and damages for immense emotional and mental anguish and trauma, and that his claim would be brought to recover for

> pain and suffering, past, present and future, both mental and physical, all medical expenses incurred for hospitals, physicians, therapy, medication and related expenses, past, present and future, lost wages, lost future earning capacity, a diminishment in capacity to labor, a loss of enjoyment of life, loss of consortium, loss of services and the scarring, disfigurement, disabilities, impairment and permanent injuries resulting from this incident.

It is clear, therefore, that the notice described the nature of Bush's losses. Cf. *Williams v. Ga. Dept. of Human Resources*, 272 Ga. 624, 624-626 (532 SE2d 401) (2000) (noting that the ante litem notice described the nature of a husband's and wife's losses as pain, disfigurement, a reduced life expectancy, and a loss of consortium, and that the couple "gave written notice of their claims under OCGA § 50-21-26 of the Georgia Tort Claims Act"). Bush's reliance on *Williams v. Wilcox*

8

*State Prison*, 341 Ga. App. 290, 294 (1) (799 SE2d 811) (2017) is unavailing because in that case, the plaintiff's notice stated solely that she had suffered "serious injuries." This general phrase could ostensibly apply to any of the losses listed in OCGA § 50-21-22 (3). Thus, our decision in *Williams* does not compel a different result, and we conclude that the ante litem notice sufficiently stated the nature of Bush's losses.[2]

b. Next, Bush argues that the notice failed to justify the monetary amount demanded or provide any "meaningful information to the State regarding [Bush's] damages." Because there is no such statutory requirement, the notice was not deficient on this basis.

"The function of the ante litem notice is . . . to provide notice to the State of the magnitude of the claim, as practicable and to the extent of the claimant's knowledge and belief at the time of the notice." *Bd. of Regents of Univ. System of Ga. v. Myers*, 295 Ga. 843, 847 (764 SE2d 543) (2014). The language of OCGA § 50-21-26 (a) (5) (E) is plain and unequivocal, simply requiring that the ante litem notice

---

[2] Although the notice does not explicitly state that Bush "suffered" the losses described, "the rule of strict compliance does not demand a hyper-technical construction that would not measurably advance the purpose of the GTCA's notice provisions." *Cummings v. Ga. Dept. of Juvenile Justice*, 282 Ga. 822, 824 (653 SE2d 729) (2007). Insofar as Bush's notice plainly stated that he "received" severe injuries and he described the losses for which he would seek to recover, the notice was sufficient as it pertains to this issue.

include "[t]he amount of the loss claimed." To this end, "our precedent indicates [that] the 'amount' of any loss claimed is the dollar amount of the loss claimed, albeit to the extent of the claimant's knowledge and belief." *Dorn v. Ga. Dept. of Behavioral Health & Developmental Disabilities*, 329 Ga. App. 384, 387 (765 SE2d 385) (2014). The ante litem notice here specified that the tort claim was being asserted in the dollar amount of $1 million, which is all that is required under the statute. Compare *Driscoll v. Bd. of Regents of Univ. Sys. of Ga.*, 326 Ga. App. 315, 317 (757 SE2d 138) (2014) (ante litem letter was insufficient because it made no mention of "any amount of loss whatsoever").[3] Therefore, there was no deficiency with regard to the stated amount of the loss.

c. Bush further argues that the notice did not specifically allege that the crane operator was negligent, or "shed light on" the crane operator's conduct. This argument fails.

OCGA § 50-21-26 (a) (5) (F) requires that the ante litem notice "state" the "acts or omissions which caused the loss." The notice in this case states that, while

---

[3] Bush's argument that the appellees knew of specific amounts for some of his medical expenses and lost wages, and should have included them, does not aid his position. The entire $1 million amount stated in the ante litem notice could include both figures that the appellees knew with certainty as well as amounts which were not yet concrete.

Bush was driving a jockey truck, a crane picked up the truck along with its container, and then dropped the truck. Thus, the notice clearly stated the act which caused Bush's losses — the lifting and dropping of the truck. The statute does not require that the notice specifically allege that an actor was negligent, or explain the manner in which such negligence manifested itself, and this Court will not superimpose either requirement into the statute.

Given the preceding, the trial court properly determined that the ante litem notice satisfied the requirements of OCGA § 50-21-26 (a) (5).

2. Next, Bush contends that the trial court erred in granting summary judgment in favor of the appellees on his legal malpractice claim. We first note that given our conclusion in Division 1 that the appellees submitted a legally sufficient ante litem notice, any legal malpractice action based on a deficient notice automatically fails. But Bush further argues that, presuming the ante litem notice was valid, the appellees were nevertheless negligent, preventing him from obtaining counsel to pursue his tort claim. This argument is not meritorious because the record shows no genuine material fact dispute that Bush discharged the appellees from representing him on his tort claim, effective August 2015, and the appellees were not the proximate cause of any failure to file a tort claim against the Georgia Ports Authority.

11

"In a legal malpractice action, the client has the burden of establishing three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff." (Citation omitted.) *Oehlerich v. Llewellyn*, 285 Ga. App. 738, 739 (647 SE2d 399) (2007). "The defendant attorney is entitled to summary judgment if he shows that there is an absence of proof adduced by the client on the issue of proximate cause." (Citation omitted.) *Kidd v. Ga. Assn. of Educators, Inc.*, 263 Ga. App 171, 173 (587 SE2d 289) (2003). In the context of legal malpractice, we have recognized that

> [t]he concept of proximate cause acts as a limitation on what would otherwise be the unlimited liability of a negligent tortfeasor for all the immediate and the eventual consequences of his negligence. Applying this concept to limit recovery necessarily involves a policy decision that, for various reasons including the intervening act of a third person, the defendant's conduct is too remote from the injury to attach liability. While this policy decision is usually left to a jury, in plain and undisputed cases the court may make the determination as a matter of law.

(Citations and punctuation omitted.) *White v. Rolley*, 225 Ga. App. 467, 469 (2) (484 SE2d 83) (1997).

In its order, the trial court concluded that Bush admitted he discharged the appellees in August 2015, and it then determined that Bush hired a new attorney to represent him on his tort claim approximately nine months before the statute of limitations expired. Bush does not dispute his admission that he discharged the appellees as of August 2015.[4] And, this unwithdrawn admission in Bush's complaint is "treated as [an] admission[] in judicio" which is "conclusive of the facts contained therein." *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 501 (1) (748 SE2d 407) (2013). See OCGA § 24-8-821 ("Without offering the same in evidence, either party may avail himself or herself of allegations or admissions made in the pleadings of the other."). Bush's position, however, is that he did not specify that he had terminated the appellees' representation of him on his tort claim against the Georgia Ports Authority. Nevertheless, Bush points to no *evidence* raising a genuine issue of material fact as to whether he discharged the appellees from representing him on his tort claim against the Georgia Ports Authority. Even when viewed in the light most favorable to Bush, the evidence in the record leads to the conclusion that the termination was indeed effective as to the tort claim.

---

[4] In fact, in a motion filed more than a year after the original complaint was filed, Bush reasserted that he discharged the appellees in August 2015.

13

In his deposition, Bush testified, "I said, I'll give [Eichholz] a shot . . . that didn't work out." Bush explained that, despite multiple calls, he could never get a response from an attorney at the Eichholz firm, and he ultimately told the receptionist that he was dissatisfied with the appellees and that he felt that he needed to find another attorney. Likewise, Bush's wife testified that Bush was "pissed off" after a call with the Eichholz firm; that the call concerned the firm no longer being able to help him; that she and her husband felt betrayed by the appellees; and that Bush had suggested retaining an attorney in Atlanta.

An attorney with Schneider Hammers averred that on or about August 25, 2015, Bush contacted the firm and stated that he was seeking assistance with *both* a workers' compensation action and a tort claim against the Georgia Ports Authority and that he wanted Schneider Hammers to evaluate both claims. At the end of August, Schneider Hammers sent Bush a "new client package" containing two retention contracts, one of which was for the tort claim. On or around September 1, 2015, Bush signed a "personal injury" retainer agreement with Schneider Hammers and returned the signed contract to the Schneider Hammers office. Moreover, the same attorney assigned to Bush's prospective tort claim spoke to Bush later in September, informing

14

him that he did not believe that the tort claim was viable.[5] Bush, too, testified that Schneider Hammers was "looking into" the tort claim and that Schneider Hammers initially told him that he "had a case" against the Georgia Ports Authority. Upon realizing that Schneider Hammers was doing "nothing" with regard to his tort claim, Bush sought yet another attorney. Given that Bush points to no evidence whatsoever suggesting that his admitted discharge of the appellees did not extend to his putative tort claim against the Georgia Ports Authority, we conclude that there is no genuine issue of material fact that the appellees were discharged from representing Bush on the tort claim as of August 2015.[6]

---

[5] Although Schneider Hammers does not appear to have countersigned the agreement, it is well-settled that "[a]n attorney-client relationship may be . . . inferred from the parties' conduct. . . . [T]he fundamental question is whether the professional advice or assistance of an attorney has been both sought and received in a legal matter," which undoubtedly occurred in this case. (Citations omitted.) *Mays v. Askin*, 262 Ga. App. 417, 419 (1) (585 SE2d 735) (2003).

[6] Bush argues that the Eichholz firm did not properly terminate its representation of him, that the record is in dispute as to whether Schneider Hammers was in fact retained to pursue the tort case, and that a jury could conclude that after the call from the Eichholz firm, he still believed that the Eichholz firm was still representing him to some degree. None of these assertions undo Bush's discharge of the appellees, and, as discussed above, the record reveals no factual dispute that that discharge was effective as to the tort claim. Similarly, the Eichholz firm's letter to Bush in May 2016, which stated that it could no longer represent him with regard to his "date of loss," does not negate Bush's August 2015 discharge of the firm. See *Peoples v. Consolidated Freightways, Inc.*, 226 Ga. App. 265, 268 (1) (486 SE2d

The determinative question, therefore, is whether Bush's discharge of the appellees, approximately nine months before the expiration of the limitation period on his tort claim against the Georgia Ports Authority, severs the appellees' potential liability with regards to Schneider Hammers' decision not to file the tort action. Bush argues that the appellees were negligent in (1) failing to provide him with a copy of the ante litem notice; and (2) not explaining to him the letter's significance and not telling him that he needed to provide this letter to any attorney that he consulted. In Bush's view, this supposed negligence "rendered the negligence of Schneider Hammers forseeable." We cannot agree.

"As with any proximate cause question involving an intervening negligent act of a third party, the answer depends on the foreseeability of the intervening negligence." *Meiners v. Fortson & White*, 210 Ga. App. 612, 613 (1) (436 SE2d 780) (1993). First, with regard to Bush receiving a copy of the ante litem letter, the record shows that the law firm transferred the entire contents of Bush's file to a disk, Bush's

_____

604) (1997) (explaining that a client "has an absolute right to dismiss an attorney at any time for any reason," and that "[c]ounsel's refusal to cease acting in the name of the client and in holding himself out as counsel for the client does not negate the termination.") (citations omitted).

wife collected the disk and misplaced it, and neither Bush nor his wife returned to the firm for another copy of Bush's file. The Schneider Hammers attorney assigned to Bush's tort claim testified that his firm decided not to continue representing Bush on the prospective tort claim because he had reviewed the documents that Bush submitted to them, he assumed those documents comprised Bush's file, and he did not see an ante litem notice within those documents.

Pretermitting whether the appellees should have impressed upon Bush the significance of the ante litem notice and/or explicitly told Bush to give the notice to his next attorney, the record does not show that the appellees could have reasonably foreseen that (1) Bush's wife would misplace the disk containing his file;[7] (2) Bush and his wife would not contact them for another disk; and (3) Bush's subsequent attorney (if any) would not timely verify whether the appellees had in fact sent an

---

[7] In his reply brief, Bush argues that the appellees gave the disk to his wife, and not to him. This does not alter our analysis. Bush testified that both he and his wife met with the Eichholz firm, that his wife was authorized to call the firm to check on the status of his case, and that he knew she had received the disk. The appellees would have reasonably believed that Bush consented to have his wife receive the disk on his behalf, and there is nothing in the record suggesting otherwise. *McKean v. GGNSC Atlanta, LLC*, 329 Ga. App. 507, 510 (1) (a) (765 SE2d 681) (2014) ("[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.") (citation omitted; emphasis in original).

ante litem notice. Indeed, Bush testified that a Schneider Hammers attorney "couldn't understand" the absence of a timely filed ante litem notice. See *Meiners*, supra, 210 Ga. App. at 613 (1) (where the first attorney advised a subsequent attorney that a party needed to be served, and the second attorney had more than six months to accomplish service, it was not reasonably foreseeable that the second attorney would have failed to cure the first attorney's error); see also *White*, supra, 225 Ga. App. at 469 (although the first attorney's failure to timely effect service on the proper parties may have been a cause in fact of subsequent attorneys' decision to accept a settlement, the first attorney's negligence was "too remote to satisfy the proximate cause requirement for a legal malpractice claim"). Compare *Rapid Group, Inc. v. Yellow Cab of Columbus, Inc.*, 253 Ga. App. 43, 47-48 (2) (557 SE2d 420) (2001) (where the attorney of record knew that the trial court had ordered that his client's pleadings would be struck if discovery responses were not filed, and also knew that his client and its local attorney were not acting timely, the attorney of record should have anticipated a default judgment and his duties were not eliminated by the local attorney's actions). Therefore, we conclude that the grant of summary judgment on Bush's legal malpractice claim was proper.

3. Third, Bush insists that the trial court erred in failing to consider the affidavit of his expert, which highlighted numerous breaches of standards of care. As discussed above, however, Bush's legal malpractice claim fails given his discharge of the appellees, so this enumeration provides no grounds for the reversal of summary judgment.

4. Next, Bush contends that the trial court erred in granting summary judgment in the appellees' favor on his fraud claim. Bush's overarching argument is that a jury could conclude that he was lured to the Eichholz firm through false television and internet advertising. The trial court did not err.

> In order to present a valid claim for fraud, a plaintiff must show (1) that the defendant made a material misrepresentation; (2) that at the time he knew it was false; (3) that he made it intending to deceive the plaintiff; (4) that the plaintiff justifiably relied on the misrepresentation; and (5) that the plaintiff sustained the alleged loss and damage as the proximate result of its having been made.

(Citation omitted.) *Nash v. Studdard*, 294 Ga. App. 845, 848 (1) (670 SE2d 508) (2008).

First, Bush takes issue with three verdicts advertised on the Eichholz firm's website, in the amounts of approximately $3.2 million, $2.8 million, and $3.6 million,

which he claims impressed upon prospective clients that the Eichholz firm systematically obtains multi-million dollar results for its clients. As to the first verdict, however, although Bush complains that it was obtained before Eichholz became associated with the Eichholz firm, it appears from the record that the firm was co-counsel on the case. As to the remaining two verdicts, while Bush summarily argues that the firm "had nothing to do with obtaining these results," he offers no record evidence supporting his assertion, and our review has uncovered none.[8] *McCannon v. Wilson*, 267 Ga. App. 815, 817 (1) (600 SE2d 796) (2004) ("Error must be shown affirmatively by the record, and not by mere recitations in a brief.") (citation omitted). Thus, we cannot hold that the Eichholz firm made false material representations in this regard.

---

[8] We observe that Bush filed two affidavits from attorneys involved in two of the cases but these affidavits were executed and filed at the end of August 2018, after the trial court had already granted the motion for summary judgment. The trial court made no mention of them in its motion for reconsideration, and we do not consider these affidavits as evidence. See *Nall v. Bill Heard Chevrolet Co.*, 238 Ga. App. 365, 366 (518 SE2d 164) (1999) ("Because nothing in the record shows the trial court considered this untimely affidavit, we do not consider it as evidence."). Compare *SJN Properties, LLC v. Fulton County Bd. of Assessors*, 296 Ga. 793, 796 (1) (770 SE2d 832) (2015) (considering de novo affidavits filed the day before the summary judgment hearing because they were timely under OCGA § 9-11-6 (d)).

Second, Bush posits that the appellees presented a false "picture," and "public persona" of a firm that would pursue justice.[9] According to Bush, Eichholz did not pan out to be the attorney he saw advertised on the television, which was the "people['s] lawyer, the justice lawyer." Nevertheless, "[i]t is axiomatic that a false representation made by a defendant, to be actionable, must relate to an existing fact or a past event." (Citation omitted; emphasis supplied.) *Fuller v. Perry*, 223 Ga. App. 129, 131 (1) (476 SE2d 793) (1996). Characterizing oneself as the "people's" lawyer or the "justice" lawyer "is not the sort of empirically verifiable statement that can be affirmatively disproven, as it is inherently a label expressive of, and generated by, opinion." *Next Century Communications Corp. v. Ellis*, 318 F3d 1023, 1028 (11th Cir. 2003); *King v. Codisco, Inc.*, 217 Ga. App. 704 (1) (458 SE2d 881) (1995) (puffing or expressions of opinion as to quality do not ordinarily constitute fraud).[10] Although we have never addressed statements like these in the context of attorney advertisements for purposes of a fraud claim, we have long held that "[a] party may

---

[9] Bush also suggests that the appellees presented as a firm that would aggressively pursue matters and would take cases to trial if necessary, but again he points to no such statements, and we have found none in our review of the record.

[10] In fact, it could be the case that another client of the appellees may attest that, in his or her experience, these same statements are true.

21

not justifiably rely on and assume to be true representations consisting of mere expressions of opinion . . . puffing, and the like; rather, the party must inquire into and examine such representations to ascertain the truth." *Sheffield v. Darby*, 244 Ga. App. 437, 439 (2) (535 SE2d 776) (2000); *Charter Medical Mgmt. Co. v. Ware Manor, Inc.*, 159 Ga. App. 378, 383 (5) (283 SE2d 330) (1981) (alleged misrepresentation as to appellant's expertise and experience "was mere commendation or puffing" and the appellee showed that it took no action to ascertain the truth thereof). The record contains no evidence that Bush ever attempted to ascertain the accuracy of the appellees' supposed representations of being the "people's" lawyer or the "justice" lawyer. For instance, although Bush apparently takes issue with the number of cases the appellees have taken to trial, the record does not show that Bush made any inquiry whatsoever regarding their trial experience. On the contrary, Bush testified that he merely saw the firm's television advertisements and went to the office, and that "[t]hey seemed to be friendly, nice people." Given the facts of this case, we conclude that the challenged representations are not actionable, and Bush's fraud claim fails as a matter of law.

5. Next, Bush argues that the trial court erred in denying his motion for reconsideration because it failed to give true consideration to his motion and the fully developed record. This contention lacks merit.

"We will uphold a trial court's decision granting or denying a motion for reconsideration absent an abuse of discretion." (Citation omitted.) *Stephens v. Alan V. Mock Const. Co.*, 302 Ga. App. 280, 281 (1) (690 SE2d 225) (2010).

First, Bush offers no support for his contention that the trial court failed to "give true consideration" to his motion for reconsideration or to all the evidence that was in the record as of the date of the summary judgment hearing. See *Smith v. Jones*, 154 Ga. App. 629, 631 (1) (269 SE2d 471) (1980) (we presume that a trial court "take[s] account of the entire setting of the case on a Rule 56 motion" even when the order of the court does not affirmatively considered the record). Insofar as Bush mentions "information" that he placed in the record after the trial court held the hearing, a trial court is not at all bound to consider evidence filed after a summary judgment hearing,[11] and Bush did not even request permission at the hearing to file

---

[11] In its order on Bush's motion for reconsideration, the trial court listed a series of documents which Bush filed after the summary judgment hearing. The trial court noted the dates on which they were filed and explained that it did not consider these documents.

23

late evidence. *Brito v. Gomez Law Group, LLC*, 289 Ga. App. 625, 627-628 (1) (658 SE2d 178) (2008) ("[I]t is within the trial court's discretion to consider materials filed after the hearing.") (citation omitted); *Zampatti v. Tradebank Intl. Franchising Corp.*, 235 Ga. App. 333, 338 (2) (b) (508 SE2d 750) (1998) (where defendant knew that the summary judgment hearing had occurred, and nevertheless filed affidavits after the hearing without requesting leave of court, trial court did not abuse its discretion in not considering the untimely affidavits). Moreover, Bush does not explain what unconsidered "information" or evidence he is alluding to and how it rendered the trial court's grant of summary judgment improper. *Eunice v. Citicorp Homeowners*, 167 Ga. App. 335 (2) (306 SE2d 395) (1983) ("[E]ven if defendants had shown that the court did not consider the depositions, their contention would still fail because they have not shown that any genuine issue of material fact is presented in the depositions. . . ."). Thus, this enumeration provides no grounds for reversal.

6. Last, Bush contends that the trial court erred in failing to recognize his second amended complaint. Because Bush's second amended complaint was not properly before the trial court for its consideration, we discern no reversible error.

Under OCGA § 9-11-15 (a), "[a] party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order.

24

Thereafter the party may amend his pleading only by leave of court or by written consent of the adverse party." In its order denying Bush's motion for reconsideration, the trial court recognized that Bush had filed a second amended complaint, but stated that he had done so without seeking or obtaining leave of court. See OCGA § 9-11-15 (a). Although Bush acknowledges that he filed his second amended complaint after the entry of the first pretrial order, he argues that because the parties continued to conduct discovery after the entry of the order, the appellees effectively failed to object to the amended complaint. The statute, however, clearly requires written consent of the adverse party, which was absent here. Also, the record does not show that Bush even requested leave from the trial court to file his second amended complaint. Thus, the trial court did not err. See *Gauker v. Eubanks*, 230 Ga. 893, 900 (4) (199 SE2d 771) (1973) (amendment was not "properly before the court" because it required leave of court or consent of the adverse party).

In sum, the trial court's grant of summary judgment to the appellees on Bush's legal malpractice and fraud claims was proper, and we affirm.

*Judgment affirmed. Rickman and Reese, JJ., concur.*